**COHEN-JOHNSON, LLC**
H. STAN JOHNSON
Nevada Bar No. 00265
sjohnson@cohenjohnson.com
BRIAN A, MORRIS, ESQ.
Nevada Bar No. 11217
bam@cohenjohnson.com
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
Telephone: (702) 823-3500
Facsimile: (702) 823-3400
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT WILLIAMSON, III, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA L. GUNVALSON, an individual;<br>DAVID BROOKS AYERS, an individual.<br><br>Defendants | Case No.:<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff, ROBERT WILLIAMSON, III, files this original complaint against VICTORIA L. GUNVALSON and DAVID BROOKS AYERS, and hereby alleges as follows:

## INTRODUCTION

This case arises out of a breach of contract and other duties between the parties.

## THE PARTIES

1.  Plaintiff, ROBERT WILLIAMSON, III, hereinafter referred to as ("RW III"), is a resident of Clark County, Nevada.

2.  Defendant, VICTORIA L. GUNVLASON, hereinafter referred to as ("Vicki"), is an individual believed to be residing in Orange County, California.

3.  Defendant, DAVID BROOKS AYERS, hereinafter referred to as ("Brooks"), is an individual believed to be residing in Orange County, California

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

**COHEN-JOHNSON, LLC**
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court under 28 U.S.C. §1332(a)(1)  and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Venue is proper in this Court under 28 U.S.C. §1391(b)(2). The Court has personal jurisdiction over Defendants because they have conducted business, formed agreements and committed tortuous conduct in this judicial district.

## GENERAL ALLEGATIONS

5.      During the time period beginning on or about May 2012, Plaintiff RW III entered into negotiations with Vicki to start a business that would be based on vodka, which would be distributed and sold under the name Vicki's Vodka.

6.      To this end a meeting was held on June 3, 2012 in Las Vegas, Nevada in a conference room located at the residence of RW III.   Present were: Victoria L. Gunvalson, Robert Williamson III, David Brooks Ayers and Michael Nicholson. The meeting took place for approximately three hours, during which the following was discussed, delegated and confirmed: business plan, roles in the business, capital infusion and other points of business.  All of this is documented in minutes and notes from the June 3rd meeting.  A copy of the June 3rd minutes and notes are attached hereto as Exhibit 1.

7.      Among other things Vicki agreed to:

   a.      Wire $12,500 into the account of Vicki's Vodka, LLC by 6-9-12 and an additional $12,500 by the end of June 2012.

   b.      Contact Brad to trademark Woo Hoo and advise the board when that is done.

   c.      Contact her PR Company to discuss a press release to be wired out no later than 7-1-12.

   d.      Contact Puerto Vallarta Cigar Factory to discuss distribution to US for online customers for Vicki's Cigars.

   e.      Other commitments which Vicki made to the promotion of the brand Vicki's Vodka, ("VV") which included all efforts to promote and market VV on the show

The Real Housewives of Orange County and any other opportunities for marketing and promotion.

8.     Based upon the promises and agreements made at the June 3rd meeting and other meetings, phone calls, emails and texts RW III moved ahead with the business known as Vicki's Vodka.

9.     On or about July 20, 2012 another meeting was held in Las Vegas, Nevada to further the business of Vicki's Vodka.  In attendance were: Ken Kamp, Brooks Ayers, Michael Nicholsen, Vicki Gunvalson, Cate Williamson and Robert Williamson.  Additional assignment, agreements and promises were made.  At this meeting it was specifically agreed, represented and promised that Vicki would negotiate her season 8 contract to include VV as part of the negotiations and product integration and that RW III would be on Andy Cohen's show, Watch What Happens Live, with her as the bar tender.

10.     Based upon the representations, agreements, and promises of Vicki and Brooks; RW III moved forward and expended substantial funds and made commitments in excess of $250,000.00.

11.     Later Michael Nicholson was removed from the company and it was understood and agreed that the company was to be owed by 50/50 by Vicki and RW III.

12.     It was learned later that Vicki, without the knowledge or approval of RW III, gave Brooks 16.67% of her member interest in Vicki's Vodka, LLC.  This made the ownership of the LLC: Vicki 33.3 %; Brooks 16.7% and RW III 50 %.

13.     On or about March of 2013, while RW III was in Clark County, Nevada, Brooks approached RW III and disclosed his ownership interest in the LLC and asked RW III to purchase his interest for the sum of $50,000.00; he claimed to need the money for unpaid IRS and child support obligations in order to prevent his imminently going to jail for non-payment.

14.     An agreement was reached, while RW III was in Clark County, Nevada, for the purchase of Brooks' interest for the sum of $50,000.00 which is memorialized in writing in an agreement dated March 6th 2013.  A copy of this agreement is attached as Exhibit 2.

15.     Upon information and belief, it was learned later that Brooks and Vicki had used

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

this purchase as a way to obtain additional money from RW III in bad faith without the intent to honor the intent of the transaction, which was that RW III would then own 66.7 % of the LLC.

16.     Later Vicki demanded that the ownership be returned to 50/50 even though she had acknowledged and signed Exhibit 2 and upon information and belief, she had received part of the money from Brooks.

17.     Upon information and belief, it was the intent of Brooks and Vicki to lure RW III into the purchase of the Brooks interest without the good faith intent to move forward with the company and make it successful.

18.     Brooks and Vicki intended that RW III would spend the additional money to buy Brooks' interest, which they knew to be worth substantially less than the $50,000 because they did not intend to use their good faith efforts to make the company successful.

19.     In fact, Vicki issues a cease and desist letter. Attached herein as Exhibit 3.

20.     In fact following the purchase of the interest from Brooks; there has been a total lack of co-operation or effort by Vicki to promote VV and to make it successful.

21.     During the meetings in Clark County, Nevada, Vicki made numerous statements and representations that she would make herself available for personal appearances as much as possible and use all efforts to publically promote VV.

22.     In addition, to the promises and representations made at the meetings held in Clark County, Nevada; Vicki reaffirmed these representations and Promises numerous times by phone, email and texts.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

23.     Plaintiff hereby realleges and incorporates each and every allegation set forth above as if the same was more fully set forth herein.

24.     The Plaintiff and Defendants, and each of them, entered into a binding oral Agreement on or about June 3, 2012 and a written agreement dated March 6th 2013.

25.     Plaintiff has fully conformed and complied with each and every term, condition,

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

provision and obligation required to be performed under and pursuant to the terms of the agreements.

26.     Defendants have not performed as required.

27.     Defendants, and each of them, have thereby breached the terms of the agreement by:

        a.     Failing to use all efforts to promote the products of Vick's Vodka;

        b.     Failing to appear at events to promote the products;

        c.     Failing to promote the products in TV shows or other entertainment events;

        d.     Failure to promote the products on social media outlets including but not limited to twitter and facebook;

        e.     Other breaches of the agreements, which will become known through discovery.

28.     As a result of Defendants' failure to perform and honor the Agreements as set forth, the Plaintiff has been damaged in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

29.     Plaintiff has been compelled to engage the services of an attorney to prosecute this action and is entitled to an award of attorney's fees and costs incurred herein.

## COUNT II
### (Breach of Covenant of Good Faith Dealing)

30.     Plaintiff hereby realleges and incorporates each and every allegation set forth above as if the same was more fully set forth herein.

31.     The agreements reached in June of 2012 and March of 2013, constitute contractual agreements and thereby incorporate the implied covenant of good faith and fair dealing.

32.     Defendants owed a duty of good faith to the Plaintiff.

33.     Defendants breached that duty by making false representations in a manner that

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

was unfaithful to the purpose of the contract.

34.     The Plaintiff's justified expectations were denied.

35.     The breach of implied covenant and fair dealing by the Defendants has caused the Plaintiff to be damaged in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

36.     Plaintiff has been compelled to engage the services of an attorney to prosecute this action and on that basis is entitled to an award of attorney's fees and costs incurred herein.

### COUNT III
### (Misrepresentations, Fraud and Omissions against All Defendants)

37.     Plaintiff hereby realleges and incorporates each and every allegation set forth above as if the same was more fully set forth herein.

38.     That all of the misrepresentations and omissions set forth above were made to the Plaintiff, and relied on by Plaintiff in making the purchase and investment described herein by RW III.

39.     These misrepresentations and omissions were material, and resulted in Plaintiff being misled about the true nature of the investment. Plaintiff relied in good faith on the misrepresentations and omissions to his detriment.

40.     That the Defendants knew or should that these representations were false.

41.     The result of these misrepresentations and omissions is that Plaintiff was induced to purchase the Brooks interest and expend funds in excess of $250,000.00.

42.     Further, Defendants, and each of them, did not intend to abide by the agreement or other representations as set forth above; and because of such acts and misrepresentations of the Defendants and each of them, and the reliance thereon by Plaintiff's, and Defendants, and each of them, having acted with malice toward the Plaintiff, the Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

43.     Plaintiff has been compelled to engage the services of counsel to prosecute this action and is entitled to an award of attorney's fees and costs incurred herein.

. . .

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## COUNT IV
### (Unjust Enrichment)

44.    Plaintiff hereby realleges and incorporates each and every allegation set forth above as if more specifically set forth herein.

45.    Plaintiff has complied with each and every term, condition, provision, obligation and covenant required to be performed by them under the Agreement.

46.    That the payments made resulted in gain to the Defendants, and each of them, and that the retention of this gain by the Defendants, and each of them, is unjust and inequitable.

47.    As a result of the actions of Defendants, and each of them, in retaining all of the funds paid to the Defendants, the Plaintiff has been damaged and the Defendants, and each of them, have been unjustly enriched in a sum in excess of Seventy-five Thousand Dollars ($75,000.00).

48.    Plaintiff has been compelled to engage the services of an attorney to prosecute this action and is entitled to an award of attorney's fees and costs incurred herein.

## COUNT V
### (Promissory Estoppel)

49.    Plaintiff hereby realleges and incorporates each and every allegation set forth above as if the same was more fully set forth herein.

50.    The Defendants and each of them, during the course of their dealing with the Plaintiff made certain representations and promises to the Plaintiff which related to the Agreement between the parties as set above.

51.    The Plaintiff has relied upon these promises as made by the Defendants, and each of them, to their detriment and has been damaged in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

52.    The Defendants, and each of them, should be estopped from denying the existence of the Agreement and promises as set forth in the Agreement and orally between the parties as to the services to be performed under the Agreement between the parties.

1   53.   Plaintiff has been compelled to engage the services of counsel to prosecute this

2   action and on that basis, is entitled to an award of attorney's fees and costs of suit

3

4   **COUNT VI**
    **(Civil Conspiracy)**

5

6   54.   Plaintiff incorporates by reference the allegations contained in all preceding
    paragraphs of this of this Complaint.

7

8   55.   Brooks and Vicki conspired to take actions designed to obtain funds from RW III

    and to cause RW III to make significant expenditures which they knew would be worthless.

9

10  56.   As a result of this conspiracy RW III has been damaged in an amount in excess of

    Seventy-five Thousand Dollars ($75,000.00).

11

12  57.   It has been necessary for Plaintiff to retain the services of an attorney to bring this

13  action, and Plaintiff is entitled to an award of attorney's fees and costs.

14

15  **COUNT VII**
    **(Attorney Fees)**

16  58.   Plaintiff incorporates by reference the allegations contained in all preceding

17  paragraphs of this of this Complaint.

18  59.   As a direct result of the wrongful acts of the Defendants, the Plaintiff has been

19  required to bring this litigation to protect his rights and to recover damages.

20  60.   Therefore, Plaintiff is entitled an award of attorney fees and/or special damages

21  and/or consequential damages for all attorney fees and costs expended and incurred in this

22  litigation.

23  . . .

24  . . .

25  . . .

26  . . .

27  . . .

28  . . .

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

**PRAYER**

Williamson respectfully asks the Court to enter judgment against Defendants, jointly and severally, as follows:

1.    For compensatory damages in a sum according to proof at trial;

2.    For special damages in a sum according to proof at trial;

3.    For interest and pre-judgment interest at the statutory rate until the amount of judgment is paid in full;

4.    For declaration that the contract between the parties was materially breached by Defendants;

5.    For attorney's  fees and costs of suit herein;

6.    For an award of punitive damages against the defendants, and each of them, in an amount in excess of $75,000.00; and

7.    For such other and further relief as the Court may deem appropriate.

Dated this 7th day of June, 2013.

COHEN-JOHNSON, LLC.

By: _____
H. Stan Johnson, Esq.
Nevada Bar No. 00265
255 W. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89118
*Attorneys for Plaintiff*

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## VERIFICATION

STATE OF NEVADA )
                )      ss.
COUNTY OF CLARK)


    ROBERT WILLIAMSON, III, being duly sworn, states that he is the Plaintiff in the above-entitled matter, that he has read the foregoing **VERIFIED COMPLAINT**, and that the same are true to the best of his knowledge, except as to the matters set forth upon information and belief, and as to those matters, he believe them to be true.

    DATED this 7th day of June, 2013.

ROBERT WILLIAMSON, III

SUBSCRIBED AND SWORN to before me this 7th day of June, 2013.


NOTARY PUBLIC, in and for said
County and State



H. STAN JOHNSON
Notary Public-State of Nevada
APPT. NO. 05-100907-1
My App. Expires October 25, 2013

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

Minutes and Notes about:
Vicki's Vodka, LLC
June 3, 2012

In attendance:
Victoria L. Gunvalson, Robert Williamson III, David Brooks Ayers, Michael Nicholson

Meeting was held in Robert Williamson's condominium's conference room in Las Vegas, NV from 1-4pm.  The 4 above people were in attendance to discuss business plan, roles, ownership, capital infusion as well as other important topics.  The following was discussed, delegated and confirmed:

Titles of Vicki's Vodka executives will be as follows:

|  | Ownership: |
| --- | --- |
| 1.  Michael Nicholson<br>President/CEO | 33% |
| 2.  Victoria Gunvalson/Woo Hoo Productions, LLC<br>Chief Financial Officer (CFO) | 33% |
| 3.  Robert Williamson III<br>Chief Marketing Officer (CMO) | 34% |
| 4.  David Brooks Ayers<br>Chief Operating Officer  (COO) | |

In addition, the following tasks/duties were discussed for the following:

1.  Michael Nicholson:
Mike agrees to the following:
- No later than the end of this week, (6/9/12) Mike will obtain a Corporate EIN # from the State of CA and will open a new bank account at Bank of American for the Company Name:  Vicki's Vodka, LLC.
- Mike will obtain email addresses for the following people:
  - Vicki@vickisvodka.com
  - Robert@vickisvodka.com
  - Mike@vickisvodka.com
  - Brooks@vickisvodka.com

- Mike will contact the website designer to design and implement "Vickisvodka.com" website and will have that up and running no later than 6/30/12
- Mike will contact the bottle designer and redesign the bottle based on the areas we discussed in the meeting
- Mike will talk with foil mfg about VV on the top instead of the grapes
- Mike will look and research facilities in Napa/Callastoga for future leasing for the entire bottling and distilling process
- Mike will finalize logo and distribute to all 3 owners plus Brooks

2. Victoria Gunvalson
    - Vicki agrees to wire $12,500 in the account of "Vicki's Vodka, LLC" in exchange of ½% ownership by the end of this week or 6/9/12.  Vicki will wire another $12,500 by the end of June for a total additional ownership of ½ for a total of $25,000 or 1%.
    - Vicki agrees to contact Brad to trademark Woo Hoo and will advise the Board when this will be completed.
    - Vicki will contract Puerto Vallarta Cigar Factor to discuss distribution to US for online customers for Vicki's Cigar's.
    - Vicki will contact her current PR company about discussing a press release to be wired online no later than 7/1/12.

3. Brooks Ayers –
    Brooks agrees to create a marketing and business plan, which will include the shareholders percentages along with the titles of the 4 parties, capital infusion.  We all agreed would like this business plan to be completed no later than 7/1/12 if not sooner.

4. Robert Williamson III
    - Robert invested $15,000 this date, plus $10,000 2 weeks ago to Mike Nicholson for capital infusion to Coujar Juice (aka: Vicki's Vodka) for a total of $25,000.  This investment from Robert to Mike is to allow Mike to proceed with website development, EIN application and to o Mike Nicholson to move Vickis Vodka into a position of production of product where it was not previously able to sustain
    - In return, Robert will acquire additional 1% for this $25k investment from the 20% investor's capital.

- Robert will proceed with existing merchandising and marketing contacts to implement the following:

    Business cards
    Clothing
    Hats
    Tshirts
    Racer Back tank tops
    Golf Shirts
    Patches
    Any other merchandise that Robert feels could be sold.

EXHIBIT 2

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS AGREEMENT made and entered into on this _6th_ day of March, 2013 by and among Robert Williamson, III, an individual (hereinafter referred to as the "Buyer") and David Brooks Ayers, an individual (hereinafter referred to as "Seller").

### WITNESSETH:

WHEREAS, Seller owns 16.67% of the membership interests in Vicki's Vodka, LLC, a California, limited liability company ("Company") (such membership interest is hereinafter referred to as the "Membership Interest"); and

WHEREAS, the Buyer is a member of the Company, and is familiar with the business, management, financial condition and operation of the Company;

WHEREAS, on the basis of the representations, warranties, covenants and agreements hereinafter made by the Seller, Buyer desires to purchase and acquire the Membership Interest from Seller; and, on the basis of the representations, warranties, covenants and agreements hereinafter made by Buyer, Seller desires to sell and transfer the Membership Interest to Buyer upon the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises made herein and the benefits to be derived from this Agreement, the parties hereto do hereby represent, warrant, covenant and agree as follows:

1. **Purchase; Release of Indebtedness.** On the terms and subject to the conditions and based upon the representations, warranties, covenants and agreements of the parties hereinafter set forth, Buyer hereby agrees to purchase from Seller and Seller hereby agrees to sell and deliver to Buyer, free and clear of all liens, pledges, liabilities, obligations, charges and encumbrances of every kind whatsoever, all of the Membership Interest, owed beneficially now or that maybe issued in the future under any currently existing agreement, which is currently 16.67 % of the member interests of the Company.

2. **Purchase Price.**

(a) The purchase price for the Membership Interest purchased under this Purchase Agreement shall be fifty thousand dollars ($50,000.00) dollars (the "Purchase Price"), to be paid as follows:

(1) by delivery of a check, cash or wired funds at the Closing (as defined in Paragraph 3 of this Agreement) to the Seller in the amount of $22,500.00 (the "Wire");

(2) by the forgiveness of five thousand dollars, which is owed currently from Seller to Buyer;



(3) by the payment of certain future expenses on behalf of Seller in the amount of $3,000.00 associated with the upcoming Kentucky Derby;

(4) by the payment of $8,000.00 on or before March 31st 2013; and

(5) by the payment of $11,500.00 on or before April 15th 2013.

## 3. Closing.

(a) The closing hereunder will take place upon the wiring of the down payment of $22,500.00, which shall occur as soon as possible following the full execution of the Agreement and upon proof satisfactory to Buyer that this Agreement has been fully executed. Such closing is hereinafter and hereinbefore sometimes referred to as the "Closing" and such time and date are hereinafter and hereinbefore sometimes referred to as the "Closing Date."

(b) At the Closing:

(1) Each individual or entity comprising the Seller shall deliver to Buyer one or more Assignments of Membership Interest, each in the form of Exhibit "A" attached hereto and made a part hereof, together with such endorsements, assignments and other instruments as, in the opinion of counsel to Buyer, are necessary for the purpose of vesting in Buyer good and valid title to the Membership Interest free and clear of all liens, charges and encumbrances.

(2) Buyer shall deliver to Seller the Check, cash or wire.

4. **Representations, Covenants, Agreements and Warranties by Seller.** The Seller, jointly and severally, hereby warrant and represent as follows:

(a) Seller has and will have at the Closing, full, lawful power and authority to enter into and to carry out the terms of this Agreement.

(b) Neither the execution nor delivery of this Agreement, nor the performance of Seller in consummating the transactions contemplated by this Agreement, will (1) conflict with or result in a violation or breach of, or constitute default under, any term or provision of any agreement or instrument to which Seller is a party or by which Seller is bound, or (2) result in the imposition of any lien, encumbrance, charge or claim upon the Membership Interest; and Seller has full power and authority to carry out all the terms, conditions and provisions of the transactions contemplated by this Agreement without the consent of any other person not a party hereto.

(c) No consent, approval or authorization of, or designation, declaration or filing, with any governmental authority is required in connection with the execution or delivery of this Agreement by Seller or the consummation by Seller of the transaction contemplated hereby.



(d) To the best of Seller's knowledge, there are no judgments, liens, actions, claims, orders, suits, proceedings or investigations pending, or in process, or threatened, that could materially affect Seller's right to enter into and consummate the transactions contemplated by this Agreement.

(e) Seller has legal title to the Membership Interest, free and clear of all liens, claims, pledges or encumbrances of any kind, nature or description arising by, through or under the Seller, with full and unrestricted legal power, authority and right to enter into this Agreement and the Security Agreement and to transfer and deliver the Membership Interest to Buyer pursuant hereto, and upon delivery of the Membership Interest to Buyer at the Closing, Buyer will be the owner of such Membership Interest and receive legal title to such Membership Interest, free and clear of all liens, claims, pledges or encumbrances of any kind, nature or description arising by, through or under the Seller.

(f) The Company is a limited liability company duly organized, validly existing and (to the best of Seller's knowledge) in good standing under the laws of the jurisdiction of its organization, and has all requisite power to own, lease and operate its properties and to carry on its business as now being conducted. The Membership Interest constitutes all of the Seller's right, title and interest in and to the Company. The Seller has not created, and is not aware of, any outstanding options, warrants, other securities, agreements or commitments pursuant to which any person has or may have the rights to acquire any or all of the Membership Interest or any other securities or any evidences of indebtedness of the Company, and to Seller's knowledge there are no existing agreements or arrangements which require or permit any of the Membership Interest to be voted by or at the direction of anyone other than the record owner thereof.

(g) To the best of Seller's knowledge, no action or proceeding at law or in equity is pending or threatened against the Company or any of its properties before any federal or state court or governmental commission, and no such proceeding is pending or threatened in arbitration or by or before any administrative agency wherein an unfavorable judgment, decision, ruling or finding would adversely affect the business, operations, assets, condition, financial or otherwise, of the Company. To the best of Seller's knowledge, there are no facts, events or occurrences by reason of which any such action or proceeding may be brought. To the best of Seller's knowledge, there are no judgments, consents, decrees, injunctions, or any other judicial or administrative mandates outstanding against the Company, and no petition in bankruptcy has ever been filed by or against the Company.

5. **Representations and Warranties of Buyer.** Buyer hereby represents and warrants as follows:

(a) Buyer has, and will have at the Closing, full lawful power and authority to enter into and to carry out the terms of, and all transactions contemplated by, this Agreement.



(b) Neither the execution nor delivery of this Agreement, nor the performance by Buyer of the transactions contemplated by this Agreement will (1) conflict with or result in a violation or breach of, or constitute a default under, any term or provision of any agreement or instrument to which Buyer is a party, or (2) result in the imposition of any lien, encumbrance, charge or claim upon any of Buyer's assets (other than the lien created by the Security Agreement), and Buyer has full power and authority to carry out all the terms, conditions and provisions of the transactions contemplated by this Agreement without the consent of any other person not a party hereto.

(c) No consent, approval or authorization of, or designation, declaration or filing, with any governmental authority is required in connection with the execution or delivery of this Agreement by Buyer or the consummation by Buyer of the transaction contemplated hereby.

(d) Buyer has not relied on any business representations or warranties of the Seller regarding the Company or Buyer's purchase of the Membership Interest and, together with Buyer's advisors, Buyer has the requisite knowledge and experience to understand the risks involved in the transactions contemplated by this Agreement.

(e) The Buyer is acquiring the Membership Interest for his own account for investment and not with a view to the distribution or with the present intention of selling, assigning or otherwise transferring any thereof. Buyer understands that the Membership Interest has not been registered under the Securities Act of 1933, as amended, and may not be sold, assigned or otherwise transferred without registration thereunder unless such sale, assignment or transfer does not involve a transaction requiring registration under the Securities Act of 1933, as amended.

6. **Conditions Precedent to Performance By Buyer.** The obligation of Buyer hereunder to purchase the Membership Interest pursuant to this Agreement is subject to the satisfaction at or prior to the Closing of all of the following conditions:

(a) Seller shall have performed and complied with all terms, covenants and conditions required by this Agreement to be performed or complied with at or before the Closing.

(b) All representations and warranties of Seller contained in this Agreement shall be true and correct at and as of the Closing, with the same force and effect as if such representations and warranties had been made as of the Closing.

(c) All actions, proceedings, instruments and documents required or taken in connection with or to carry out the transactions contemplated by this Agreement, and all other legal matters incidental thereto, shall have been satisfactory in form and substance to Buyer's counsel.

7. **Expenses.** Buyer and Seller will each pay the fee and expenses of their respective counsel and accountants.



**8. Survival.** All representations, warranties, covenants and indemnities made by any party to this Agreement in connection with the transactions contemplated hereby, or in any exhibit, schedule, certificate, list or other document delivered pursuant hereto, shall survive the Closing.

**9. Notices.** All notice and communications to any party required hereunder shall be in writing and shall be delivered to such party at his, her or its address set forth at the beginning of this Agreement, or to such other address as such party may designate by notice given hereunder. Any notices and communications which are mailed, shall be sent by registered or certified first-class mail, postage prepaid.

**10. Assignment.** On or before the Closing Date, no party may assign his, her or its rights, duties or obligations under this Agreement. After the Closing, the terms, provisions, covenants and conditions of this Agreement shall bind and benefit the parties hereto and their respective heirs, successors, personal representatives and assigns.

**11. Counterparts.** This Agreement may be executed in two or more counterparts, each of which, when so executed and delivered, shall be an original instrument, but such counterparts, together, shall constitute a single agreement. A copy or fax of the original shall be considered an original for purposes of enforcement or proof of execution.

**12. Entire Agreement and Amendments.** This Agreement, including the exhibits, schedules and certificates referred to herein which are a part hereof, contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended only by a written instrument executed by all of the parties hereto, or their respective heirs, successors, personal representatives and assigns. There are no restrictions, promises, warranties, covenants or undertaking other than those expressly set forth herein.

**13. Governing Law.** This Agreement, the Note, the Security Agreement and the respective rights and obligations of the parties hereunder, shall be construed under and be governed by the laws of the State of Nevada without regard to principles of conflict of laws. Any action, claim or proceeding brought by any party hereunder shall be commenced exclusively in the courts of the State of Nevada, or the federal courts of the United States of America located in such State, and the parties hereto each hereby irrevocably and unconditionally consent to the exclusive jurisdiction and venue of such courts in any action, claim or proceeding brought under this Agreement.

**14. Headings.** Headings are inserted for convenience and do not form a part of the Agreement.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed in their respective names, in person or by their authorized officers, as of the day and year first above written.

SELLER:                                          BUYER:
DAVID BROOKS AYERS                               ROBERT WILLIAMSON, III

_____                _____
Print Name: DAVID BROOK Ayers                    Print Name:

STATE OF NEVADA          )
                         ) ss:
COUNTY OF CLARK          )

       On March 6, 2013 personally appeared before, me a Notary Public, ROBERT WILLIAMSON, III, who acknowledged that he executed the foregoing instrument.

_____
NOTARY PUBLIC

STATE OF _____    )
                         ) ss:
COUNTY OF _____     )

       On March ___, 2013 personally appeared before, me a Notary Public, DAVID BROOKS AYERS, who acknowledged that he executed the foregoing instrument.

_____
NOTARY PUBLIC

AGREEMENT AND ACKNOWLEDGEMENT

It is also agreed and acknowledged that VICKI GUNVALSON ("Gunvalson") is currently a member of the Company and owns 33.33 % of the Company and Seller owns 16.67 % of the Company. Gunvalson agrees that she will not now or in the future sell, transfer, or gift any of

her ownership interest in the Company without obtaining the written unanimous approval of the other members of the Company.  Any such transfer without written approval shall be deemed null and void.  Gunvalson hereby consents to, and approves this sale and transfer of the Seller's member interest to Buyer.


_____
VICKI GUNVALSON

Victoria Gunvalson


STATE OF _____ )
                        ) ss:
COUNTY OF_____ )

      On March ___, 2013 personally appeared before, me a Notary Public, VICKI GUNVALSON, who acknowledged that she executed the foregoing instrument.


*see attached CA ack*   _____
                        NOTARY PUBLIC

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of ORANGE

On 3-6-2013 before me, JUDY KEEGAN, NOTARY PUBLIC
    Date                          Here Insert Name and Title of the Officer

personally appeared DAVID BROOKS AYERS
                          Name(s) of Signer(s)

JUDY KEEGAN
Commission # 1863983
Notary Public - California
Orange County
My Comm. Expires Sep 5, 2013

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Judy Keegan_
                          Signature of Notary Public

Place Notary Seal Above

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| | |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)            Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _ORANGE_ }

On _3-6-2013_ before me, _JUDY KEEGAN, NOTARY PUBLIC_
    Date                        Here Insert Name and Title of the Officer

personally appeared _VICTORIA GUNVALSON_
                        Name(s) of Signer(s)



JUDY KEEGAN
Commission # 1863363
Notary Public - California
Orange County
My Comm. Expires Sep 5. 2013

who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Judy Keegan_
                    Signature of Notary Public

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

EXHIBIT 3

**From:** "Richard P. Brull" <rbrull@brull-law.com>
**Date:** May 10, 2013, 4:53:35 PM PDT
**To:** "Stephen A. Crystal" <sac1109@aol.com>
**Subject: Vicki's Vodka.**

Dear Steve,

It has come to our attention that boxes for shipping Vicki's Vodka are being prepared that include Vicki's likeness.  Please be advised that Vicki's Vodka, LLC has no right to use Vicki's full name, her likeness or voice in connection with any goods or services without Vicki's prior written approval. To date, other than the promotional appearances that Vicki has made on behalf of Vicki's Vodka, the only use that has been approved is the use of Vicki name in connection with the quote on the back of the Vicki's Vodka bottle.  Please have forwarded to me any use of Vicki's name, likeness or voice that Vicki's Vodka desires to use and I will let you know whether the use in question is approved.

Additionally, I have yet to receive the draft of the operating agreement that you were going to send to me some weeks ago.  Vicki is becoming more and more concerned about actions that Robert may be taking in connection with the company without her knowledge and/or approval.  It is imperative that we get the operating agreement wrapped up and work out any management issues there are between the parties so we can all move forward with the company.

Best,
Rick


Richard P. Brull
THE BRULL LAW FIRM, 1925 Century Park East, Suite 2300, Los Angeles, California  90067
Telephone: (310) 788-0820, Facsimile: (310) 553-4120