DAVID BROOKS AYERS
9 PASEO DALIA
RANCHO SANTA MARGARITA, CA 92688
Tel: (949) 728-8972
Email: BAyers01@aol.com
Defendant In Proper Person

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT WILLIAMSON III, an individual, | CASE No. 2:13-cv-01019-RCJ-GWF |
| Plaintiff, | **AMENDED ANSWER, COUNTERCLAIM AND THIRD PARTY CLAIM** |
| v. | |
| VICTORIA L. GUNVALSON, an individual; DAVID BROOKS AYERS, an individual, and DOES, | |
| Defendants. | |
| DAVID BROOKS AYERS, | |
| Counterclaimant, | |
| vs | |
| ROBERT WILLIAMSON III, | |
| Counterdefendant,  and | |
| CATE-WAKEM WILLIAMSON and ANGELA TORRES, | |
| Third Party Defendants. | |

Defendant DAVID BROOKS AYERS ("Defendant"), for himself only, answers the verified complaint ("Complaint") of Plaintiff ROBERT WILLIAMSON III ("Plaintiff"), as follows:

    1.      Answering paragraph 1 of the Complaint, Defendant admits all allegations therein.

8542.2.1b

2.      Answering paragraph 2 of the Complaint, Defendant admits all allegations therein.

3.      Answering paragraph 3 of the Complaint, Defendant admits all allegations therein.

4.      Answering paragraph 4 of the Complaint, Defendant admits that he has conducted business in this judicial district. Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

5.      Answering paragraph 5 of the Complaint, Defendant admits that he was aware of negotiations between Plaintiff and Victoria L. Gunvalson ("Gunvalson") concerning a vodka business ("Business"). Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

6.      Answering paragraph 6 of the Complaint, Defendant admits all allegations therein.

7.      Answering paragraph 7 of the Complaint, Defendant admits all allegations therein.

8.      Answering paragraph 8 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis denies each and every allegation contained therein.

9.      Answering paragraph 9 of the Complaint, Defendant admits all allegations therein.

10.     Answering paragraph 10 of the Complaint, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraph, and on that basis denies each and every allegation contained therein.

11.     Answering paragraph 11 of the Complaint, Defendant admits that Plaintiff removed Nicholson as an owner of Vicki's Vodka, LLC, a California entity ("VV LLC"). Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

12.     Answering paragraph 12 of the Complaint, Defendant admits that Gunvalson gave him a membership interest in VV LLC to compensate him for the services he had provided. Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

13.     Answering paragraph 13 of the Complaint, Defendant admits that he met Plaintiff in or about March 2013, and that they discussed Plaintiff's purchase of Defendant's interest in VV

1  LLC, and that Defendant told Plaintiff that he needed money for child support and an IRS

2  payment.  Except as so admitted, Defendant denies each and every allegation contained in the said

3  paragraph.

4       14.    Answering paragraph 14 of the Complaint, save that the referenced agreement was

5  subsequently modified, Defendant admits all allegations therein.

6       15.    Answering paragraph 15 of the Complaint, Defendant demies all allegations

7  therein.

8       16.    Answering paragraph 16 of the Complaint, Defendant admits that Gunvalson

9  requested that she and Plaintiff should have joint control of VV LLC.  Except as so admitted,

10  Defendant denies each and every allegation contained in the said paragraph.

11       17.    Answering paragraph 17 of the Complaint, Defendant denies all allegations therein.

12       18.    Answering paragraph 18 of the Complaint, Defendant denies all allegations therein.

13       19.    Answering paragraph 19 of the Complaint, Defendant admits that Gunvalson's

14  attorney sent the email in question to Plaintiff's attorney.  Except as so admitted, Defendant denies

15  each and every allegation contained in the said paragraph.

16       20.    Answering paragraph 20 of the Complaint, Defendant denies all allegations therein.

17       21.    Answering paragraph 21 of the Complaint, Defendant admits that Gunvalson made

18  the representations described in paragraph 7 of the Complaint.  Except as so admitted, Defendant

19  denies each and every allegation contained in the said paragraph.

20       22.    Answering paragraph 22 of the Complaint, Defendant admits that Gunvalson made

21  the representations described in paragraph 7 of the Complaint.  Except as so admitted, Defendant

22  denies each and every allegation contained in the said paragraph.

23       23.    Paragraph 23 of the Complaint requires no response.

24       24.    Answering paragraph 24 of the Complaint, Defendant admits that he agreed to sell

25  his interest in VV LLC to Plaintiff.  Except as so admitted, Defendant denies each and every

26  allegation contained in the said paragraph.

27       25.    Answering paragraph 25 of the Complaint, Defendant admits that Plaintiff paid him

28

1  $50,000 for his interest in VV LLC.  Except as so admitted, Defendant denies each and every

2  allegation contained in the said paragraph.

3          26.      Answering paragraph 26 of the Complaint, Defendant denies all allegations therein.

4          27.      Answering paragraph 27 of the Complaint, Defendant denies all allegations therein.

5          28.      Answering paragraph 28 of the Complaint, Defendant denies all allegations therein.

6          29.      Answering paragraph 29 of the Complaint, save that Defendant admits that Plaintiff

7  has retained counsel, Defendant denies all allegations therein.

8          30.      Paragraph 30 of the Complaint requires no response.

9          31.      Answering paragraph 31 of the Complaint, Defendant admits that he agreed to sell

10  his interest in VV LLC to Plaintiff for $50,000, and that the implied covenant of good faith and

11  fair dealing was implied into that agreement. Except as so admitted, Defendant denies each and

12  every allegation contained in the said paragraph.

13          32.      Answering paragraph 32 of the Complaint, Defendant admits that the implied

14  covenant of good faith and fair dealing was implied into his agreement to sell his interest in VV

15  LLC to Plaintiff. Except as so admitted, Defendant denies each and every allegation contained in

16  the said paragraph.

17          33.      Answering paragraph 33 of the Complaint, Defendant denies all allegations therein.

18          34.      Answering paragraph 34 of the Complaint, Defendant denies all allegations therein.

19          35.      Answering paragraph 35 of the Complaint, Defendant denies all allegations therein.

20          36.      Answering paragraph 36 of the Complaint, save that Defendant admits that Plaintiff

21  has retained counsel, Defendant denies all allegations therein.

22          37.      Paragraph 37 of the Complaint requires no response.

23          38.      Answering paragraph 38 of the Complaint, Defendant admits that he represented to

24  Plaintiff that he would sell his interest in VV LLC to Plaintiff for $50,000. Except as so admitted,

25  Defendant denies each and every allegation contained in the said paragraph.

26          39.      Answering paragraph 39 of the Complaint, Defendant denies all allegations therein.

27          40.      Answering paragraph 40 of the Complaint, Defendant denies all allegations therein.

28

8542.2.1b

41.     Answering paragraph 41 of the Complaint, Defendant admits that Plaintiff paid him $50,000 for his interest in VV LLC. Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

42.     Answering paragraph 42 of the Complaint, Defendant denies all allegations therein.

43.     Answering paragraph 43 of the Complaint, save that Defendant admits that Plaintiff has retained counsel, Defendant denies all allegations therein.

44.     Paragraph 44 of the Complaint requires no response.

45.     Answering paragraph 45 of the Complaint, Defendant admits that Plaintiff paid him $50,000 for his interest in VV LLC. Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

46.     Answering paragraph 46 of the Complaint, Defendant denies all allegations therein.

47.     Answering paragraph 47 of the Complaint, Defendant denies all allegations therein.

48.     Answering paragraph 48 of the Complaint, save that Defendant admits that Plaintiff has retained counsel, Defendant denies all allegations therein.

49.     Paragraph 49 of the Complaint requires no response.

50.     Answering paragraph 50 of the Complaint, Defendant admits that he represented to Plaintiff that he would sell his interest in VV LLC to Plaintiff for $50,000. Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

51.     Answering paragraph 51 of the Complaint, Defendant denies all allegations therein.

52.     Answering paragraph 52 of the Complaint, Defendant admits that Plaintiff paid him $50,000 for his interest in VV LLC. Except as so admitted, Defendant denies each and every allegation contained in the said paragraph.

53.     Answering paragraph 53 of the Complaint, save that Defendant admits that Plaintiff has retained counsel, Defendant denies all allegations therein.

54.     Paragraph 54 of the Complaint requires no response.

55.     Answering paragraph 55 of the Complaint, Defendant denies all allegations therein.

56.     Answering paragraph 56 of the Complaint, Defendant denies all allegations therein.

57.     Answering paragraph 57 of the Complaint, save that Defendant admits that Plaintiff has retained counsel, Defendant denies all allegations therein.

58.     Paragraph 58 of the Complaint requires no response.

59.     Answering paragraph 59 of the Complaint, Defendant denies all allegations therein.

60.     Answering paragraph 60 of the Complaint, Defendant denies all allegations therein.

## FIRST AFFIRMATIVE DEFENSE

### (Failure To State A Cause Of Action)

61.     Neither the Complaint, nor any purported cause of action alleged therein, states facts sufficient to state a cause of action against Defendant.

## SECOND AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

62.     This action is barred by reason of acts, omissions, representations, and courses of conduct by Plaintiff's agents, assigns or employees, upon which Defendant was led to rely to its detriment, thereby barring under the doctrine of equitable estoppel the causes of action asserted by Plaintiff as against Defendant.

## THIRD AFFIRMATIVE DEFENSE

### (Ratification and Acquiescence)

63.     Plaintiff's claims are barred by the doctrines of ratification and acquiescence.

## FOURTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

64.     The Complaint and the causes of action alleged therein do not state facts sufficient to constitute a cause of action, in that the alleged causes of action are barred by the applicable statutes of limitations.

## FIFTH AFFIRMATIVE DEFENSE

### (Lack of Damages)

65.     Plaintiff has suffered no legally cognizable damages as a result of the matters alleged in the Complaint.

8542.2.1b

6

### SIXTH AFFIRMATIVE DEFENSE

#### (Mitigation of Damages)

66.     Plaintiff has failed to mitigate damages, and to the extent of such failure to mitigate, any damages awarded to Plaintiff should be reduced accordingly.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Consent)

67.     Plaintiff consented to all conduct by Defendant.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Waiver)

68.     By Plaintiff's conduct, he has in whole or in part waived any claim against Defendant.

### NINTH AFFIRMATIVE DEFENSE

#### (Plaintiff's Conduct)

69.     The Complaint and each of its claims are barred by reason of the fraud, tortious, wrongful or negligent conduct committed by Plaintiff or his employees or agents.

### TENTH AFFIRMATIVE DEFENSE

#### (Unjust Enrichment)

70.     The Complaint and each of its claims fail because Plaintiff would be unjustly enriched and would obtain a windfall if it were permitted to recover on its claim.

71.     Defendant reserves the right to assert any additional defense(s) upon discovery thereof.

WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

        1.     That Plaintiff take nothing by virtue of this Complaint;

        2.     That the Complaint be dismissed with prejudice;

        3.     For costs of suit incurred herein; and

4.    For such other and further relief as the Court deems just and proper.

Dated this 19th day of August, 2013.

DAVID BROOKS AYERS
9 PASEO DALIA
RANCHO SANTA MARGARITA, CA 92688
Tel: (949) 728-8972
Email: BAyers01@aol.com
Defendant In Proper Person

## COUNTERCLAIM

COMES NOW, DAVID BROOKS AYERS, Counterclaimant, and submits this Counterclaim and Third Party Claim, and would submit as follows:

### PARTIES AND JURISDICITON

1. The Counterclaimant is a resident of Orange County, California, and is a defendant in the above entitled action.

2. He brings this counterclaim and third party claim under FRCP 13, 14, 15, and 20; thus, jurisdiction is proper.

3. That Counterdefendant ROBERT WILLIAMSON, III, hereinafter called ROBERT, is the plaintiff in this action.

4. That Third Party Defendant CATE WAKEM-WILLIAMSON, hereinafter called CATE, is the current wife of ROBERT. She is a resident of Clark County, Nevada, as well as in Maricopa County, Arizona.

5. That Third Party Defendant ANGELA TORRES, hereinafter called ANGELA, is a mistress of ROBERT'S, and, on reason and belief, has relocated from New Mexico to Santa Clarita, Los Angeles California.

6. The Counterdefendant and Third Party Defendants, and others, both in Clark County, Nevada and outside of Clark County, Nevada, acted in concert, conspired and otherwise collaborated with each other to produce the harm to the counterclaimant.

7. That the overwhelming bulk of the evidence is in Clark County, Nevada, and thus

1  jurisdiction is proper in this Honorable Court.

2  8. That the genesis of the tortious conduct occurred in Las Vegas, Clark County, Nevada, and

3  thus jurisdiction is further proper in the Honorable Court.

4  9. That the tortious conduct of the Counterdefendant and the Third Party Defendants is

5  integrally interwoven with the plaintiff's case, and thus jurisdiction is proper in this

6  Honorable Court.

7  10. That the amount of damages is in excess of $75,000.

8  ## FACTS IN SUPPORT OF COUNTERCLAIM AND THIRD PARTY CLAIM

9  11.   Counterclaimant repeats and realleges the prior paragraphs as if fully set out therein.

10

11  12. That Vicki Gunvalson, and the defendant, DAVID BROOKS AYERS, (hereinafter called

12  "BROOKS"), have been involved with each other since 2010, in both a personal and

13  business relationship.

14  13. That BROOKS and VICKIE   met the Plaintiff in May 2011.  CATE, ROBERT'S wife,

15  was also present.

16  14.  In August 2012, ROBERT introduced ANGELA, a mistress of ROBERT'S, to BROOKS,

17  ROBERT solicited   BROOKS'S assistance in keeping ANGELA at bay from CATE.

18  Eventually, CATE learned about this relationship, although it is unclear as to how much

19  ROBERT shared about the depth of his relationship with ANGELA.

20

21  15. That VICKI has been, and currently is, an original member of "Real Housewives of

22  Orange County," an internationally syndicated television series.  Because of VICKI'S

23  notoriety and fame, the concept of   Vicki's Vodka came to fruition.

24  16.  ROBERT explained that he had the contacts to make this venture a success. BROOKS

25  located MIKE NICHOLSON, who in turn invented the recipe and distilled the vodka.

26  MIKE owns the company CJ VODKA, owns the recipe, the label, and has the alcohol

27

28

8542.2.1b

9

license to Vicki's Vodka.

17. Vicki's Vodka, a California LLC, was formed.

18. BROOKS, in consideration of the quality and quantity of his efforts, received a one third interest in VICKI's interest.

19. This arrangement was well known to ROBERT, contrary to his pleadings. MIKE had 33%, VICKI and ROBERT each had a 33.5% interest. ROBERT never prepared an operating agreement, nor is there a management agreement, despite demands that he do so. ROBERT, acting rogue, subsequently, ROBERT proceeded to represent that to  VICKI and BROOKS that MIKE no longer had an interest in Vicki's Vodka, but that he was needed to perform certain functions in conjunction with the company.  ROBERT then agreed to purchase BROOK'S interest for $50,000.00 on March 6, 2013.

20. That ROBERT was always aware of BROOKS'S interest; he was clearly troubled by the VICKI and BROOKS'S close relationship.

21. That ROBERT set up many ruses with respect to BROOKS. He, on reason and belief, retained BLAIR ABBOTT, a private investigator to surreptitiously attempt to obtain information from BROOKS,

22. He also enlisted a man named STEVE BARKET, to assist in the scheme.

23. That  ROBERT had befriended BROOKS, and learned that VICKI would be travelling to Las Vegas to meet BROOKS for his birthday weekend, the weekend on March 15, 2013.

24. That ROBERT then texted BROOKS on March 14, 2013, and stated that he would love to meet BROOKS'S son.  This was a ruse to make it appear that ROBERT had no agenda against BROOKS.

25. Although BROOKS had made special arrangements to have VICKI picked up at the airport. ROBERT and CATE contacted VICKI, and told her that they needed to speak to

VICKI for no more than an hour. VICKI told BROOKS that it would only be for an hour.

26. That the scheme than manifested itself. VICKI was escorted by ROBERT to the Bellagio, along with several individuals, including bodyguards, CATE, and ROBERT, and Steve Barket, all part of the façade and scheme by ROBERT, CATE, and others to slander, libel, and defame BROOKS to VICKI.

27. That at this meeting, ROBERT, BARKET, and CATE, clearly acting in unison and in concert, told VICKI the following false, slanderous, and defamatory statements about BROOKS during this meeting and at other times:

   a. *Brooks got the paralegal from his divorce attorney in MS pregnant causing her to lose her job.*
   b. *Brooks is a dangerous guy who has threatened Robert and Cate's life.*
   c. *That Brooks hired a hit man to kill Robert.*
   d. *That Brooks misappropriated   Robert's comps at the Hard Rock on the weekend of March 15-17th.*
   e. *That Brooks conspired with Angela Torres (Robert's mistress) to extort money from Robert by introducing her to Robert then "skimming" money from "supposed" cash deposits that Robert gave to Brooks to make on Angela's behalf.*
   f. *Robert/Angela both said that Brooks made 20 deposits, and on each and every occasion misappropriated funds. Robert full well knew that Brooks only made two deposits for Robert, and the deposit slips were given to Robert.*
   g. *That Brooks has taken cash payments for Insurance premiums from clients and not purchased the appropriate Insurance for the clients, thus stealing from clients.*
   h. *That Brooks had "many" sexual diseases. Brooks has NEVER had any sexual diseases of ANY kind.*

28. That as a proximate and direct of those false, defamatory and libelous statements, VICKI was induced to end her relationship with BROOKS, and was instructed by Barket and ROBERT to send a text telling BROOKS to "lose her number."

29. That the Counterdefendants and Third Party Defendants caused the text and breakup to be published, it literally went viral, and was published internationally.

30. That the Counterdefendant then texted false and defamatory statements

31. That as a direct result of the   false, defamatory and libelous  statements, the counterclaimant has suffered loss of reputation, humiliation, stress, anxiety, and loss of

business opportunities, all in excess of $75,000, for which he now sues.

32. That after the tortious conduct by ROBERT, CATE, and others, VICKI began to question ROBERT'S veracity, and asked ROBERT to send her proof of the slanderous and defamatory allegations.

33. That ROBERT went silent, and would not, and could not; produce anything to remotely back up the slanderous and defamatory statements that he, CATE, and others had made at the Bellagio on March 16, 2013.

34. That VICKI, upon receiving no proof from ROBERT of any of the allegations that were made, then re-initiated her relationship with BROOKS.

35. That on May 19, 2013, VICKI posted on her Twitter account a picture of her and BROOKS in Cabo San Lucas,

36. That it was apparent that ROBERT was not able to completely sever the  relationship between BROOKS and VICKI, and enlisted ANGELA'S  help.

37. That ROBERT is so close to ANGELA is so close to ANGELA and is clearly capable of enlisting ANGELA's aid; he has even had personal jewelers come to their room at the Hard Rock to show engagement rings to ANGELA, according to texts from ANGELA to BROOKS.  ANGELA has sent text pictures of the engagement ring that ROBERT bought for ANGELA, texting BROOKS that ROBERT is leaving Cate for her. See Exhibit A

38. That on reason and belief, ANGELA was given VICKI'S phone number by ROBERT, and a  a mere two days later on May 21, 2013, at 7:59 PM, ANGELA then sent text messages to VICKI, with the intent to falsely and maliciously slander and defame BROOKS, said messages stating that BROOKS had misappropriated funds that were intended for her by ROBERT for support of ANGELA.

39. That she also claimed that BROOKS was an extortionist, and also claimed that she had

proof of deposits to show that BROOKS was skimming money that ROBERT had given BROOKS for the support of ANGELA.

40. That these text messages are all part of a common scheme to humiliate, slander, and defame BROOKS.

41. That next, ROBERT initiated the instant case against VICKI and BROOKS.

42. VICKI and others, without counsel, then met with a discharged paralegal from ROBERT'S counsel, along with  ROBERT, and Steve Barket, in order to try to resolve the case.

43. That during these discussions, ROBERT and others continued to defame and slander BROOKS, all party of the scheme to ruin BROOKS in the eyes of VICKI and others.

44. That these statements are admissible, as they are not intended to serve as an admission of liability against any party.

45. The case against VICKI has been dismissed without prejudice, but BROOKS remains a party.

### SLANDER AND DEFAMATION

46. Counterclaimant repeats the allegations in the prior paragraphs as if fully set out.

47. That a statement is   defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject up to contempt.

48. That an action for defamation requires four elements, a false and defamatory statement, an unprivileged publication to a third person, fault, amounting to at least negligence, and actual and presumed damages.

49. That the Counterdefendant and the Third Party Defendants have  committed slander and defamation.

50. That the Counterclaimant has sustained damages, including but not limited to pain, suffering, humiliation, loss to business and general reputation, all in excess of $75,000, for

8542.2.1b                                          13

which he now sues.

51. That ROBERT, CATE, and ANGELA should be ordered to pay punitive and exemplary damages.

WHEREFORE, the Counterclaimant prays as follows:

1.  That the Counterclaimant be awarded actual damages against the Counterdefendant and the Third Party Defendants,

2.  That the Counterclaimant be awarded exemplary and punitive damages, and

3.  For any further relief that is appropriate under the circumstances.

Dated this 19th day of August, 2013

DAVID BROOKS AYERS
9 PASEO DALIA
RANCHO SANTA MARGARITA, CA 92688
949-728-8972
Bayers01@aol.com
Defendant/Counterclaimant in proper person

8542.2.1b

14

**VERIFICATION**

1

2          I have read the foregoing VERIFIED AMENDED ANSWER AND COUNTERCLAIM
AND know its contents.

3          I am a party to this action.  The matters stated in the foregoing document are true of my
own knowledge except as to those matters  which are stated on information and belief, and as to
4    those matters I believe them to be true.

5          Executed on August 19, 2013 in Las Vegas, Nevada

6          I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

7

8

9     David Brooks Ayers
Print Name of Signatory                           Signature

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A



A

**Angela**
505-217-8416

**OMG what is going on Brooks! We need to talk PLEASE!!!**

8:03am, March 31

**Sorry I'm just really scared for my life**

9:36am, March 31

**Talk?**

Sent: 7:22pm, March 31

**Sorry I missed your call last night. I went to bed early**

11:31am, April 1

**Cab I call you in 15 minutes?**

Sent: 11:43am, April 1

**Later because I'm at work**



😀 **Angela**
505-217-8416

**Later because I'm at work**

11:44am, April 1

**Just let me know when later.  OK?**

Sent: 11:45am, April 1

**Ok**

11:45am, April 1

**Anything from Robert?**

Sent: 11:45am, April 1

**Nope!**

11:53am, April 1

**I called him on his own bluff!!! He's not going to contact me. He's nothing but a liar! Just like he proposed to me and promised he**







 **Angela**
505-217-8416

What's the big rush on this phone bill?

11:27am, April 9

The BIG deal is that Robert has implicated me/you in a plan to extort/blackmail and/or have him killed.  Pretty serious and I'm not taking it lightly.

Sent: 11:30am, April 9 

Well it's obvious that its not true. I'm still with my son but hoping we are home soon. I guess I'm just. Confused on everything. Sorry

11:35am, April 9

Well, he provided a supposed text from your phone that came from me.  We will find out the facts.  It'll 

 **Angela**
505-217-8416 

be nice if you'll cooperate with me.
Remember, you contacted me on
3/31.  I'm trying to help you as well!

Sent: 11:52am, April 9

Yes I did contact you because I
was concerned about the threat I
got from his so called attorney! I'm
not worried about any he said she
said crap. I thin

12:00pm, April 9

k you and rob need to talk and clear
things up because you 2 are
making a big deal out of nonsense.
Then getting Vicky involved is
another thing. It's a

12:01pm, April 9

big mess that you 3 need to sit

  **Angela**
505-217-8416

big mess that you 3 need to sit down and talk about. I will talk to any of you if you need info from my end

12:01pm, April 9

I didn't create this mess at all but somehow I'm involved. Things just don't add up and now there are authorities involved. 

Sent: 12:04pm, April 9

Vicky and Rob have so much going for the vodka company and all this is doing is putting things on hold I'm sure. I'm not worried about authorities. They

12:06pm, April 9

can contact me at any time.

 **Angela**
505-217-8416 



So, you're telling me that you never insinuated to Robert that I was contacting you via text that I was encouraging you to extort money from him or we'd have him killed?  I also need timelines from you.

Sent: 12:09pm, April 9

No. I told rob that I felt like he was going to hurt ME! and how the fuck would I extort my fiancé for money????? And how did Vicky find out about Lorett

12:13pm, April 9



a? I have NEVER met Vicky in my life. I'm a single mom with 4 kids do you think I would mess with anyone much less a man I was in love with????

 **Angela**
505-217-8416  

I'll be busy from 1 pm through the rest of the night.  Too much to text. I think he just wanted to isolate me from Vicki because I knew too much on him.  Makes me very sad. 

Sent: 12:24pm, April 9

 I really did love him and even when he threatened Me I still didn't try contacting Cate. It wasn't in my heart

12:26pm, April 9

I'm sure you did.  Send me a pic of the engagement ring he bought you.  When/how/where did he "propose" to you?  That's so bizarre!  No one deserves to be treated like this! 



We were at the hard rock. He had his personal jeweler take 3 rings to the room and he let me pick one



