COHEN-JOHNSON, LLC
H. STAN JOHNSON, ESQ.
Nevada Bar No. 00265
sjohnson@cohenjohnson.com
MICHAEL V. HUGHES, ESQ.
Nevada Bar No. 13154
mhughes@cjdlawgroup.com
255 East Warm Springs Road, Suite 100
Las Vegas, Nevada 89119
Telephone:   (702) 823-3500
Facsimile:   (702) 823-3400
*Attorneys for Plaintiffs Robert Williamson III and Vicki's Vodka, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT WILLIAMSON, III, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA L. GUNVALSON, an individual; DAVID BROOKS AYERS, an individual,<br><br>Defendants. | **BASE CASE NO:**<br><br>Case No.:    2:13-cv-01019-JAD-GWF<br><br>**MEMBER CASE NO:**<br><br>Case No.:    2:13-cv-02022-JAD-GWF |
| ROBERT WILLIAMSON, III, an individual; VICKI'S VODKA, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>VICTORIA L. GUNVALSON, an individual; DAVID BROOKS AYERS, an individual; MICHAEL NICHOLSON, an individual; COUGAR JUICE VODKA, LLC, a California limited liability company; SWEETWATERS DISTILLERS, INC., a California corporation; WOO HOO PRODUCTIONS, LLC, a California limited liability company,<br><br>Defendants. | **RESPONSE MEMORANDUM OF PLAINTIFF ROBERT WILLIAMSON, III AND PLAINTIFF VICKI'S VODKA, LLC IN OPPOSITION TO DEFENDANT VICTORIA GUNVALSON'S AND DEFENDANT WOO HOO PRODUCTIONS, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OF MEMBER CLAIMS BY ROBERT WILLIAMSON, III AND VICKI'S VODKA, LLC, A NEVADA LIMITED LIABILITY COMPANY** |

COMES NOW, Plaintiffs, Robert Williamson, III ("R. Williamson") and Vicki's Vodka, LLC, a Nevada limited liability company, ("Vicki's Vodka of Nevada") (hereinafter collectively referred to as "Plaintiffs"), by and through their counsel of record, H. Stan Johnson, Esq. and Michael V. Hughes, Esq. of the law firm of Cohen-Johnson, LLC, and hereby submit their response memorandum in opposition to Defendant Victoria Gunvalson's And Defendant Woo Hoo Productions, LLC's Motion For Summary Judgment Or, In The Alternative, Partial Summary Judgment, Of Member Claims By Robert Williamson, III And Vicki's Vodka, LLC, A Nevada Limited Liability Company ("Defendants' Motion").

## INTRODUCTION

R. Williamson, Victoria Gunvalson ("Gunvalson") and Woo Hoo Productions, LLC ("Woo Hoo") are involved in the above-captioned proceedings because Gunvalson engaged in wrongful conduct in connection with three separate business transactions and Gunvalson and Woo Hoo engaged in wrongful conduct in connection with two of those business transactions. The first business transaction commenced on or about June 3, 2012 and continued to July 20, 2012 and resulted in the creation of a series of oral agreements among R. Williamson, Gunvalson, Woo Hoo, and others regarding the formation and operation of Vicki's Vodka, LLC, a California limited liability company ("Vicki's Vodka of California"). The second business transaction occurred on or about March 6, 2013 and resulted in the creation of a written Membership Interest Purchase Agreement ("MIP Agreement") among R. Williamson, Gunvalson, Woo Hoo, and one other person by the name of David Brooks Ayers ("Ayers"). The final business transaction occurred on or about July 15, 2013 and resulted in the creation of a written Settlement Agreement ("Settlement Agreement") between R. Williamson and Gunvalson.

Each of the aforementioned agreements imposed duties and obligations on R. Williamson and Gunvalson and two of those agreements imposed duties and obligations on R. Williamson, Gunvalson, and Woo Hoo. R. Williamson complied with his duties and obligations under each of the aforementioned agreements. Gunvalson and Woo Hoo, however, never fulfilled their duties and obligations either because they never intended to do so or because they elected to

breach the terms of each of the agreements applicable to them. As a result of the wrongful conduct by Gunvalson and Woo Hoo, R. Williamson was injured and forced to commence the above-captioned proceedings against Gunvalson, Woo Hoo, and others to obtain relief from the wrongful conduct of Gunvalson, Woo Hoo, and others.

Gunvalson and Woo Hoo have now filed a motion for summary judgment against R. Williamson and Vicki's Vodka of Nevada in an effort to escape from being held accountable for Gunvalson's wrongful conduct. Their efforts to escape from such liability through Defendants' Motion should fail since: (1) R. Williamson suffered the injuries from the wrongful conduct f Gunvalson and Woo Hoo and, therefore, is the only person with standing to pursue the claims alleged against Gunvalson and Woo Hoo in the Verified Complaint filed in the case designated as Case No. 2:13-CV-02022-JAD-GWF (hereinafter referred to as the "Second Lawsuit"); (2) R. Williamson has set forth legally sufficient claims against Gunvalson and Woo Hoo in the Verified Complaint filed in the Second Lawsuit; and (3) R. Williamson has identified genuine issues of material fact with respect to many of the claims alleged against Gunvalson and Woo Hoo in the Verified Complaint filed in the Second Lawsuit.

## BACKGROUND FACTS

*The First Business Transaction: The Oral Agreement*

In or about May 2012, R. Williamson entered into negotiations with Gunvalson, Woo Hoo, and others to pursue a business venture which was intended to distribute and sell vodka under the brand name of Vicki's Vodka. *See* the Verified Complaint filed in the Second Lawsuit (hereinafter referred to as the "Verified Complaint") at ¶ 14. R. Williamson, Gunvalson, Woo Hoo, and others decided to continue the negotiations into June 2012 and, as a result, conducted a meeting on June 3, 2012 in a conference room located at the Las Vegas condominium complex where R. Williamson owned a condominium. *See* the Verified Complaint at ¶ 15; the Verified Complaint at Exhibit 1; the Declaration Of Victoria Gunvalson In Support Of Victoria Gunvalson's And Woo Hoo Productions, LLC's Motion For Summary Judgment Or, In The Alternative, Partial Summary Judgment, Of Member Claims By Robert Williamson, III And Vicki's Vodka LLC, A Nevada Limited Liability Company (hereinafter referred to as

"Gunvalson's Declaration") at ¶ 2; and Gunvalson's Declaration at Exhibit A. R. Williamson, Gunvalson, Woo Hoo, and others were present at that meeting. *See* the Verified Complaint at ¶ 15; the Verified Complaint at Exhibit 1; Gunvalson's Declaration at ¶ 2; and Gunvalson's Declaration at Exhibit A. The meeting took place for approximately three hours and involved negotiations and agreements related to: (1) the business plan for Vicki's Vodka of California; (2) the role of R. Williamson, Gunvalson, Woo Hoo, and others in the business of Vicki's Vodka of California; (3) the ownership structure for Vicki's Vodka of California; (4) the capital infusion to be made by R. Williamson and Gunvalson into Vicki's Vodka of California; and (5) other important topics related to the business of Vicki's Vodka of California. *See* the Verified Complaint at ¶ 15; the Verified Complaint at Exhibit 1; Gunvalson's Declaration at ¶ 2; and Gunvalson's Declaration at Exhibit A.

Following the meeting on June 3, 2012, R. Williamson, Gunvalson, Woo Hoo, and others agreed to have further negotiations and agreements regarding the business affairs of Vicki's Vodka of California. As a consequence, R. Williamson, Gunvalson, Woo Hoo and others conducted a meeting on July 20, 2012 in a conference room located at the Las Vegas condominium complex where R. Williamson owned a condominium. *See* the Verified Complaint at ¶ 18; Gunvalson's Declaration at ¶ 4; and Gunvalson's Declaration at Exhibit C. That meeting resulted in additional negotiations and agreements regarding Vicki's Vodka of California. *See* Gunvalson's Declaration at Exhibit C.

As a result of the meetings held on June 3, 2012 and July 20, 2012, R. Williamson, Gunvalson, Woo Hoo, and others formed a series of oral agreements (hereinafter collectively referred to as the "Oral Agreements"). *See* the Verified Complaint at Exhibit 1; Gunvalson's Declaration at Exhibit A; and Gunvalson's Declaration at Exhibit C. The Oral Agreements imposed duties and obligations on R. Williamson, Gunvalson and others. Those duties and obligations included without limitation: (1) the duty and obligation of R. Williamson to make substantial capital contributions to Vicki's Vodka of California (*see* the Verified Complaint at Exhibit 1; Gunvalson's Declaration at Exhibit A; and Gunvalson's Declaration at Exhibit C); (2) the duty and obligation of Gunvalson to use all efforts to promote the products and brand

name of Vicki's Vodka of California (*see* the Verified Complaint at ¶¶ 16, 30, and 31); and (3) the duty and obligation of R. Williamson, Gunvalson, Woo Hoo, and one other person to retain their ownership of their respective membership interests in Vicki's Vodka of California (*see* Gunvalson's Declaration at Exhibit C). R. Williamson complied with his duties and obligations under the Oral Agreements. *See* the Verified Complaint at ¶¶ 19 and 68. Gunvalson and Woo Hoo, however, did not comply with their duties and obligations under the Oral Agreements. *See* the Verified Complaint at ¶¶ 69 and 70. As a result, R. Williamson was injured by the wrongful conduct of Gunvalson and Woo Hoo.

*The Second Business Transaction: The MIP Agreement*

Following the formation of Vicki's Vodka of California, one of the members of Vicki's Vodka of California relinquished his membership interests in Vicki's Vodka of California. *See* the Verified Complaint at ¶ 20 and Gunvalson's Declaration at ¶ 6. As a result, R. Williamson and Gunvalson agreed that R. Williamson would own 50% of the membership interests in Vicki's Vodka of California and Gunvalson and Woo Hoo would own the other 50% of the membership interests in Vicki's Vodka of California. *See* the Verified Complaint at ¶ 20 and Gunvalson's Declaration at ¶ 6.

Following the reallocation among R. Williamson, Gunvalson, and Woo Hoo of the membership interests in Vicki's Vodka of California, Gunvalson and Woo Hoo transferred to Ayers without the prior knowledge or consent of R. Williamson one third of their membership interests in Vicki's Vodka of California. *See* Verified Complaint at ¶ 21 and Gunvalson Declaration at ¶ 6. As a result of that transfer, R. Williamson owned 50% of the membership interests in Vicki's Vodka of California, Gunvalson/Woo Hoo owned 33.33% of the membership interests in Vicki's Vodka of California, and Ayers owned 16.67% of the membership interests in Vicki's Vodka of California. *See* the Verified Complaint at ¶¶ 21 and 22 and Gunvalson's Declaration at ¶ 6. R. Williamson also had as a result of that transfer a claim against Gunvalson and Woo Hoo for breach of the Oral Agreements.

In or about March 2013, R. Williamson learned of the transfer to Ayers of the membership interests previously owned by Gunvalson and Woo Hoo in Vicki's Vodka of

California. *See* the Verified Complaint at ¶¶ 21 and 22. Upon discovery of this fact, R. Williamson entered into negotiations with Ayers and Gunvalson regarding the terms upon which R. Williamson would acquire the 16.67% membership interest held by Ayers in Vicki's Vodka of California. Those negotiations resulted in the MIP Agreement executed by R. Williamson, Gunvalson, and Ayers. *See* the Verified Complaint at Exhibit 2. As part of the MIP Agreement, R. Williamson agreed to purchase the 16.67% membership interest held by Ayers in Vicki's Vodka of California in exchange for Gunvalson's acknowledgement and agreement that: (1) Gunvalson owned 33.33% of the membership interests in Vicki's Vodka of California; (2) Ayers owned 16.67 % of the membership interests in Vicki's Vodka of California; and (3) Gunvalson consented to and approved of the sale and transfer to R. Williamsons of the membership interests held by Ayer's in Vicki's Vodka of California. *See* the Verified Complaint at Exhibit 2. In consideration for Gunvalson's acknowledgements and agreements, R. Williamson purchased at a price of $50,000.00 the 16.67% membership interest held by Ayers in Vicki's Vodka of California and, as a result of that transaction, R. Williamson believed that he owned 66.67% of the membership interests in Vicki's Vodka of California, that Gunvalson and Woo Hoo owned 33.33% of the membership interests in Vicki's Vodka of California, and that Gunvalson and Woo Hoo had consented to and agreed to such an ownership structure for Vicki's Vodka of California. R. Williamson's beliefs were, however, frustrated by the fact that Gunvalson undertook actions after the closing of the aforementioned sale that indicated that she did not in fact consent to and approve of the sale and transfer to R. Williamson of the membership interests held by Ayers in Vicki's Vodka of California. *See* the Verified Complaint at ¶¶ 24 through 29. As a result of such activity by Gunvalson, R. Williamsons was injured.

*The Third Business Transaction: The Settlement Agreement*

In light of the injuries suffered by him in connection with the Oral Agreement and the MIP Agreement, R. Williamson commenced litigation against Gunvalson and Ayers on or about June 7, 2013. That case was assigned Case No. 2:13-CV-01019-JAD-GWF (hereinafter referred to as the "First Lawsuit"). Shortly after the commencement of the First Lawsuit, Gunvalson and her former manager traveled to Las Vegas to meet with R. Williamson in an alleged effort to

settle the First Lawsuit and to make arrangements to continue with the business affairs of Vicki's Vodka of California. *See* the Verified Complaint at ¶¶ 48 through 50 and Gunvalson's Declaration at ¶ 12. R. Williamson and Gunvalson met on or about July 13, 2013. *See* the Verified Complaint at ¶ 49 and Gunvalson's Declaration at ¶ 12. At that meeting, R. Williamson and Gunvalson negotiated the terms of the Settlement Agreement (*see* the Verified Complaint at ¶¶ 49 through 50) and, shortly thereafter, executed it on July 15, 2013 (*see* the Verified Complaint at Exhibit 4). In light of Gunvalson's execution of the Settlement Agreement, R. Williamson complied with his duties and obligations under the Settlement Agreement by causing Gunvalson to be dismissed without prejudice from the First Lawsuit. *See* the Verified Complaint at ¶ 51.

Notwithstanding the compliance of R. Williamson with the Settlement Agreement, Gunvalson chose to repudiate and to breach the Settlement Agreement. *See* Verified Complaint at ¶¶ 52 through 58. In fact, she caused her prior legal counsel to send in early August 2013 certain emails wherein she asserted positions contrary to the Settlement Agreement (*see* the Verified Complaint at ¶ 55) including without limitation: (1) the position that she owed no duties or obligations under the Settlement Agreement (*see* the Verified Complaint at ¶ 56); and (2) the position that R. Williamson had to return all funds paid under the Settlement Agreement (*see* the Verified Complaint at ¶ 56). In short, Gunvalson had repudiated and breached the Settlement Agreement and, as a result, forced R. Williamson to commence the Second Lawsuit in order to obtain relief for his injuries.

## LEGAL ANALYSIS

*Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure restricts this Court from granting motions for summary judgment to only those circumstances where the movant has shown: (1) that there is no genuine dispute as to any material fact and (2) that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. Pro. 56(a). As will be set forth below, Gunvalson and Woo Hoo have not met that heavy burden in Defendants' Motion because: (1) there are genuine issues of material fact and (2) there is no right to a judgment as a matter of law.

*Legal Argument*

*R. Williamson Has Standing To Pursue His Personal
Claims Against Gunvalson And Woo Hoo*

R. Williamson has as a matter of law the exclusive right to pursue his personal claims against Gunvalson and Woo Hoo. Each of the claims at issue here are the personal claims of R. Williamson because, as will be shown below, R. Williamson, and not Vicki's Vodka of California, suffered the injuries arising from the wrongful actions of Gunvalson and Woo Hoo.

*R. Williamson Has Standing To Pursue His Meritorious Claims For
Breach Of The Oral Agreements And Breach Of The Covenant Of
Good Faith And Fair Dealing Arising From Those Agreements*

Gunvalson and Woo Hoo launch only one attack on the meritorious claims of R. Williamson and Vicki's Vodka of Nevada for breach of the Oral Agreements and breach of the covenant of good faith and fair dealing arising from those agreements. Their contention asserts that R. Williamson and Vicki's Vodka of Nevada have no standing to pursue such claims. Their assertion lacks merit since R. Williamson and not Vicki's Vodka of California was the only contractual party injured by the breach of the Oral Agreements. Simply put, R. Williamson, Gunvalson, and Woo Hoo were the parties to the Oral Agreements. Vicki's Vodka of California was not, as a matter of law, a party to those agreements because, as Gunvalson and Woo Hoo admit, Vicki's Vodka of California did not exist on June 3, 2012. It was formed on June 5, 2012. Additionally, Vicki's Vodka of California never became a party to the Oral Agreements because, as Gunvalson and Woo Hoo admit, Vicki's Vodka of California never had a written operating agreement pursuant to which Vicki's Vodka of California could have ratified the Oral Agreements and in which R. Williamson could have agreed to the novation of the liability owed by Gunvalson and Woo Hoo to R. Williamson on account of the Oral Agreements. As a result, the breach by Gunvalson and Woo Hoo of the Oral Agreements as well as the breach of the related covenant of good faith and fair dealing could only have as a matter of law injured R. Williamson since Vicki's Vodka of California was never a party to the Oral Agreements.[1]

---

[1] Gunvalson and Woo Hoo contend that the Oral Agreements are "business-related" claims arising from or related to their membership status in Vicki's Vodka of California. That contention mischaracterizes their

*R. Williamson Has Standing To Pursue His Meritorious Claims For Breach Of The Membership Interest Purchase Agreement And The Covenant Of Good Faith And Fair Dealing Arising From That Agreement*

Gunvalson and Woo Hoo launch three attacks on the meritorious claims of R. Williamson and Vicki's Vodka of Nevada for breach of the MIP Agreement and breach of the covenant of good faith and fair dealing arising from that agreement. Initially, they contend that R. Williamson and Vicki's Vodka of Nevada have no standing to pursue the claims for breach of the MIP Agreement and breach of the covenant of good faith and fair dealing arising from that agreement. This contention lacks merit as a matter of law because R. Williamson and not Vicki's Vodka of California was the only contractual party injured by the breach of the MIP Agreement. As the MIP Agreement makes abundantly clear, R. Williamson, Ayers, Gunvalson, and Woo Hoo were the only parties to the MIP Agreement. Accordingly, the breach of the MIP Agreement could not as a matter of law have injured Vicki's Vodka of California. That breach did, however, injure R. Williamson.

Gunvalson and Woo Hoo next contend that R. Williamson and Vicki's Vodka of Nevada have no claim against Gunvalson and Woo Hoo for breach of MIP Agreement and its related covenant of good faith and fair dealing because Gunvalson and Woo Hoo were not parties to that agreement. This contention, however, has no merit as a matter of law. The MIP Agreement is signed by Gunvalson notwithstanding Gunvalson's baseless assertions to the contrary. See the "Agreement and Acknowledgement" portion of the MIP Agreement, at pp. 6 – 7. As a result, Gunvalson and Woo Hoo are parties to the MIP Agreement and liable for their breach of that agreement.

---

true status at the time of the creation of the Oral Agreements. As noted above, Vicki's Vodka of California did not exist on June 3, 2012 and, as a result, Gunvalson and Woo Hoo could not at that time be members of that limited liability company. They were in fact promoters of Vicki's Vodka on June 3, 2012 and, as a result, were personally liable on all contracts formed by them pending the ratification of such contracts by Vicki's Vodka of California and the novation of any liability arising under those contracts. Since no ratification or novation has ever occurred, Gunvalson and Woo Hoo, as promoters of Vicki's Vodka of California, are personally liable on the Oral Agreements made with R. Williamson.

Gunvalson and Woo Hoo finally maintain that R. Williamson and Vicki's Vodka of Nevada have no claim against Gunvalson and Woo Hoo for breach of the MIP Agreement because R. Williamson suffered no damages in light of his receipt of the membership interests which were the subject of the MIP Agreement. Their contention, however, misconstrues the basis of the claim alleged against them. R. Williamson did not bargain with Gunvalson and Woo Hoo for the receipt of the membership interests previously held by Ayers in Vicki's Vodka of California. He bargained for: (1) their acknowledgement and agreement that Ayres owned 16.67% of the membership interests in Vicki's Vodka of California; (2) their acknowledgement and agreement that Gunvalson and Woo Hoo owned 33.33% of the membership interest in Vicki's Vodka of California; and (3) their consent to and approval of the sale and transfer to R. Williamson of the membership interest previously held by Ayers in Vicki's Vodka of California. See the "Agreement and Acknowledgement" portion of the MIP Agreement, at pp. 6 – 7. Gunvalson and Woo Hoo have breached at least one and perhaps all three of those provisions of the MIP Agreement in light of the fact that, after the payment of the full amount of the purchase price by R. Williamson set forth in the MIP Agreement, Gunvalson and Woo Hoo maintained that they still possessed the membership interests which was the subject of the MIP Agreement and undertook actions inconsistent with their consent to and approval of the sale and transfer to R. Williamson of the membership interest previously held by Ayers in Vicki's Vodka of California. Accordingly, they have either breached the representations concerning the ownership of those membership interests or have reneged on their consent to and approval of the sale and transfer to R. Williamson of the relevant membership interests previously held by Ayers. As a result, R. Williamson has been significantly injured by the conduct of Gunvalson and Woo Hoo.

*Williamson Has Standing To Pursue His Meritorious Claim For Breach Of The Settlement Agreement And The Covenant Of Good Faith And Fair Dealing Arising From That Agreement*

Gunvalson and Woo Hoo launch only one attack on the meritorious claims of Plaintiffs for breach of the Settlement Agreement and breach of the covenant of good faith and fair dealing arising from that agreement. That attack rests on the assertion that R. Williamson committed an

anticipatory breach of the Settlement Agreement. That argument, however, lacks merit as a matter of law. Under the terms of the Settlement Agreement, R. Williamson only agreed to dismiss Gunvalson from the First Lawsuit within ten business days of the execution of the Settlement Agreement. R. Williamson fully fulfilled that provision of the agreement. He did not, however, agree to dismiss his claims with prejudice or to forego filing a second lawsuit against Gunvalson. Accordingly, R. Williamson was well within his rights to commence a second lawsuit against Gunvalson especially in light of the fact that she was not fulfilling and said she would not fulfill more than fifteen duties and obligations imposed upon her in the Settlement Agreement. Accordingly, R. Williamson did not commit an anticipatory breach of the Settlement Agreement.[2] He merely responded to Gunvalson's repudiation and breach of the Settlement Agreement.

*Williamson Has Standing To Pursue His Meritorious Claims For Misrepresentation, Fraud, And Omission Arising In Connection With The Oral Agreement, The MIP Agreement, And The Settlement Agreement*

Gunvalson and Woo Hoo launch two attacks on the meritorious claims of Plaintiffs for misrepresentation, fraud, and omission. Each of their attacks lack merit as a matter of law.

Gunvalson and Woo Hoo initially assert that R. Williamson and Vicki's Vodka of Nevada have no standing to pursue the claims for misrepresentation, fraud, and omission arising in connection with the Oral Agreement, the MIP Agreement, and the Settlement Agreement because such claims are "business-related claims." The thrust of their contention appears to be that Gunvalson and Woo Hoo made all of their representations in those agreements to Vicki's Vodka of California and not to R. Williamson. Their contention, however, is flawed since, as

---

[2] Gunvalson and Woo Hoo repeatedly attempt to mischaracterize the full extent of the duties and obligations imposed on them under the Settlement Agreement. They wish to mislead the Court into believing that the Settlement Agreement only required them to make two payments each in the amount of $12,500.00. That mischaracterization is preposterous. The Settlement Agreement imposed more than fifteen duties and obligations on Gunvalson and Woo Hoo including one obligation to pay damages in the aggregate amount $121,000.00. See the Settlement Terms set forth in the Settlement Agreement. Notwithstanding the existence of such contractual duties and obligations, Gunvalson chose to repudiate and breach the Settlement Agreement.

previously discussed, Vicki's Vodka of California was not a party to any of those agreements. As a result, Gunvalson and Woo Hoo could not have been making any representations to Vicki's Vodka of California as a matter of law. However, R. Williamson was a party to all of those agreements and was undoubtedly the recipient of those false representations. Accordingly, he alone has standing to sue for the injuries suffered by him each time he relied on such representations to: (1) make capital contributions to Vicki's Vodka of California pursuant to the Oral Agreement; (2) make payments to Ayers pursuant to the MIP Agreement; or (3) to take actions pursuant to the Settlement Agreement.

Gunvalson and Woo Hoo next contend that, even if they made representations to R. Williamson, they made no misrepresentations. As will be shown below, the veracity of each of the representations made by Gunvalson and Woo Hoo is a factual issue about which there is plainly a genuine dispute.

Genuine issues of material fact exist with respect to the existence of misrepresentations made by Gunvalson and Woo Hoo in the Oral Agreement. Gunvalson and Woo Hoo contend that they made no misrepresentations in connection with the Oral Agreements. However, R. Williamson contend that Gunvalson and Woo Hoo did make misrepresentations in connection with the Oral Agreement in light of: (1) the persistent failure of Gunvalson to use all efforts to promote the business of Vicki's Vodka of California; (2) the failure of Gunvalson to appear at events to promote the products of Vicki's Vodka of California; (3) the failure of Gunvalson to promote the products of Vicki's Vodka of California on social media outlets such as Twitter and Facebook; and (4) the transfer to Ayers by Gunvalson and Woo Hoo of a portion of their membership interests in Vicki's Vodka of California.

Similarly, genuine issues of material fact exist with respect to the existence of misrepresentations made by Gunvalson and Woo Hoo in the MIP Agreement. As previously

noted, Gunvalson and Woo Hoo represented to R. Williamson in the MIP Agreement that: (1) Ayers owned 16.67 % of the membership interests in Vicki's Vodka of California; (2) Gunvalson and Woo Hoo owned 33.33% of the membership interest in Vicki's Vodka of California; and (3) Gunvalson and Woo Hoo consented to and approved of the sale and transfer of such membership interest from Ayres to R. Williamson. They now contend that such representations are true. R. Williamsons and Vicki's Vodka of Nevada, however, contend that, prior to the commencement of this lawsuit, Gunvalson and Woo Hoo undertook actions completely inconsistent with Gunvalson's representations regarding the ownership of the membership interests in Vicki's Vodka of California and their purported consent to or approval of the sale and transfer to R. Williamson of the membership interests previously held by Ayers in Vicki's Vodka of California. As a result of such conduct, R. Williamson was injured.

Finally, genuine issues of fact exist with respect to the intent of Gunvalson to comply with the promises set forth in the Settlement Agreement. Gunvalson and Woo Hoo contend that Gunvalson fulfilled the terms of the Settlement Agreement prior to the alleged anticipatory breach by R. Williamson and Vicki's Vodka of Nevada and, therefore, had no fraudulent intent with respect to the Settlement Agreement. R. Williamson and Vicki's Vodka of Nevada, however, contend that Gunvalson never intended to honor the Settlement Agreement as evidenced by her repudiation of the Settlement Agreement, her failure to comply with virtually all of the terms of the Settlement Agreement, and her frivolous defense of "anticipatory breach." In short, genuine issues of material fact exist concerning the intent of Gunvalson to comply with the promises set forth in the Settlement Agreement.

*R. Williamson Has Unjust Enrichment Claims Against Gunvalson And Woo Hoo*

Gunvalson and Woo Hoo assert two attacks on the unjust enrichment claims being pursued by R. Williamson and Vicki's Vodka of Nevada. The initial attack is that Gunvalson

and Woo Hoo never received or retained a benefit from the Oral Agreement, MIP Agreement, or the Settlement Agreement. Their contention lacks merit. Gunvalson and Woo Hoo received the right to have and then retained a membership interest in Vicki's Vodka of California as a result of the Oral Agreement. They requested and received the benefit arising from the elimination of Ayers as a member in Vicki's Vodka in California as a result of the MIP Agreement. Gunvalson also requested and received the benefit of a dismissal from the First Lawsuit as a result of the Settlement Agreement. In short, Gunvalson and Woo Hoo received and still retain a benefit from each of the aforementioned agreements.

      Gunvalson and Woo Hoo next attack the unjust enrichment claims being pursued by R. Williamson and Vicki's Vodka of Nevada on the ground that no such claims can exist if the Court finds that legally valid written contract covers each of the three separate business transactions at issue in this case. Their contention lacks merit to the extent that no legally valid written contract exists. Under the facts here, the Oral Agreements were never reduced to a written contract and, as a consequence, an unjust enrichment claim can be still be asserted with respect to the benefits received and retained by Gunvalson and Woo Hoo under the Oral Agreements. Additionally, genuine issues of material fact exist with respect to the legal validity of the MIP Agreement since Gunvalson and Woo Hoo vigorously dispute being parties to that agreement and, as a result, summary judgment cannot yet be granted on that business transaction. Finally, genuine issues of material fact exist with respect to the Settlement Agreement since Gunvalson and Woo Hoo challenge the validity of that agreement and, as a result, summary judgment cannot yet be granted in connection with that business transaction.

*R. Williamson Has A Promissory Estoppel Claim Against Gunvalson and Woo Hoo Because Gunvalson Did Induce R. Williamson To Invest Capital Into Vicki's Vodka, To Purchase The Membership Interest of Ayers, And To Enter Into The Settlement Agreement*

      Gunvalson and Woo Hoo launch two attacks on the meritorious promissory estoppel claims presented by R. Williamson and Vicki's Vodka of Nevada. They initially assert that R. Williamson and Vicki's Vodka of Nevada have no standing to pursue the promissory estoppel claims arising in the context of the Oral Agreement, the MIP Agreement, and the Settlement

Agreement. The thrust of that contention is that Gunvalson and Woo Hoo never made any promises to R. Williamson and Vicki's Vodka of Nevada. That contention, however, lacks merit with respect to the Oral Agreement, the MIP Agreement, and the Settlement Agreement. As previously discussed, Vicki's Vodka of California was not a party to the Oral Agreement, the MIP Agreement, or the Settlement Agreement. R. Williamson was, however, a party to each of those agreements. As a result, he was as a matter of law the only recipient of the promises made by Gunvalson and Woo Hoo in connection with those agreements. Accordingly, he alone was injured when Gunvalson and Woo Hoo failed to keep the promises made by them to him.

Gunvalson and Woo Hoo next contend that, if they made promises to R. Williamson, such promises did not induce R. Williamson to take to act or to forbear from acting. This contention lacks merit. R. Williamson made capital contributions to Vicki's Vodka of California pursuant to the terms of the Oral Agreements in reliance on the promises received from Gunvalson and Woo Hoo that: (1) Gunvalson would use all efforts to market the products of Vicki Vodka of California; and (2) Gunvalson and Woo Hoo would not transfer to any third party their membership interests in Vicki's Vodka of California. R. Williamson purchased the membership interests held by Ayers in Vicki's Vodka of California pursuant to the MIP Agreement in reliance on each of the acknowledgements and agreements made by Gunvalson and Woo Hoo in that agreement. Finally, R. Williamson dismissed Gunvalson from the First Lawsuit solely in reliance on the promises made by her in the Settlement Agreement.

*R. Williamson Has Civil Conspiracy Claims Against Gunvalson and Woo Hoo Because of the Material Misrepresentations Made By Gunvalson and Woo Hoo in connection with the Oral Agreement and the MIP Agreement*

Gunvalson and Woo Hoo launch two attacks on the meritorious civil conspiracy claims of R. Williamson and Vicki's Vodka of Nevada. Their first attack is to misconstrue the scope of the civil conspiracy claims. They assert that the conspiracy claims are limited to the transactions

surrounding the MIP Agreement. That assertion is incorrect. The civil conspiracy claims brought by R. Williamson and Vicki's Vodka of Nevada focus on the transactions involving the Oral Agreements and the MIP Agreement. Accordingly, each set of transactions will be summarized below to set forth the scope of a civil conspiracy claims brought by R. Williamson and Vicki's Vodka of Nevada and to demonstrate that genuine issues of material fact exist with respect to each such claim.

The second attack brought by Gunvalson and Woo Hoo on the civil conspiracy claims is that Gunvalson and Woo Hoo had no intent to defraud in connection with their dealings with R. Williamson and Vicki's Vodka of Nevada. That attack lacks merit because genuine issues of material fact do exist on the issue of intent in connection with both the Oral Agreements and the MIP Agreement. Under the Oral Agreements, R. Williamson promised to make substantial capital contributions to Vicki's Vodka in exchange for the promises of Gunvalson and Woo Hoo that: (1) Gunvalson would use all efforts to market the products and brand name of Vicki's Vodka of California; and (2) Gunvalson and Woo Hoo would not transfer their membership interests in Vicki's Vodka of California. As set forth in the Verified Complaint, Gunvalson and Woo Hoo did not ever intend to fulfill such promises even though they knew R. Williamson would make substantial capital contributions to Vicki's Vodka of California in reliance on such promises. Gunvalson and Woo Hoo presumably dispute that they intended to defraud R. Williamson. Accordingly, genuine issues of material fact exist on the issue whether or not Gunvalson, Woo Hoo, and others intended to defraud R. Williamson in connection with the Oral Agreements.

Similarly, genuine issues of material fact do exist on the issue of intent to defraud in connection with the MIP Agreement. As previously noted, Gunvalson was a party to the MIP Agreement by virtue of her execution of that section of the MIP Agreement entitled "Agreement

and Acknowledgement." Under that portion of the MIP Agreement, Gunvalson purportedly consented to and approved of the sale and transfer to R. Williamson of the membership interests held by Ayers in Vicki's Vodka of California. However, she subsequently engaged in conduct which was completely inconsistent with her alleged consent and approval. That conduct included without limitation: (1) her assertion that the membership interests in Vicki's Vodka of California should remain evenly divided between R. Williamson and Woo Hoo; and (2) her complete failure to promote the products and brand name of Vicki's Vodka of California following the closing the of the sale contemplated by the MIP Agreement. In short, there are genuine issues of material fact about whether or not Gunvalson and Woo Hoo ever intended to consent to and approve of the sale and transfer of the membership interest previously held by Ayers in Vicki's Vodka of California.

*R. Williamson Has An Intentional Infliction Of Emotional Distress Claim Against Gunvalson and Woo Hoo Because Of The Outrageous Conduct of Gunvalson And The Emotional Distress Suffered by R. Williamson*

Gunvalson and Woo Hoo launch three attacks on the meritorious claim of R. Williamson and Vicki's Vodka for intentional infliction of emotional distress. They initially contend that no claim for the intentional infliction of emotional distress exists since no evidence exists to support the other claims brought by R. Williamson and Vicki's Vodka of Nevada. Their contention lacks merit. As noted above, R. Williamson and Vicki's Vodka have set forth sufficient facts to create at least genuine issues of material fact concerning the transactions arising from or related to the Oral Agreements, the MIP Agreement, and the Settlement Agreement.

Gunvalson and Woo Hoo next contend that their conduct in connection with the Oral Agreements, the MIP Agreement, and the Settlement Agreement was not outrageous. Their contention lacks merit since genuine issues of material fact exist with respect to whether or not their conduct was outrageous. As noted above, genuine issues of material fact exist about

whether or not: (1) Gunvalson and Woo Hoo intended to defraud R. Williamson and Vicki's Vodka of Nevada in connection with the Oral Agreements; (2) Gunvalson and Woo Hoo intended to defraud R. Williamson and Vicki's Vodka of Nevada in connection with the MIP Agreements; (3) Gunvalson intended to defraud R. Williamson in connection with the Settlement Agreement; and (4) Gunvalson and Woo Hoo conspired with others to defraud R. Williamson and Vicki's Vodka of Nevada in connection with the Oral Agreements and the MIP Agreement. Accordingly, genuine issues of material fact concerning the outrageousness of the conduct by Gunvalson and Woo Hoo shall exist pending a resolution of the factual issues about the intent of Gunvalson and Woo Hoo to defraud and to conspire to defraud R. Williamson and Vicki's Vodka of Nevada.

Gunvalson and Woo Hoo finally contend the no evidence exists about whether or not R. Williamson suffered severe emotional distress on account of their outrageous conduct. Their contention lacks merit. As set forth in the Verified Complaint, R. Williamson states under oath that he suffered emotional distress on account of the conduct of Gunvalson, Woo Hoo, and others. Additionally, the Court can infer that R. Williamson suffered from emotional distress from the outrageousness of the conduct perpetrated by Gunvalson and Woo Hoo in connection with the claims alleged in the Second Lawsuit for fraud and conspiracy to commit fraud.

*R. Williamson Can Recover Attorney's Fees*

Gunvalson and Woo Hoo contend that R. Williamson has no right to seek attorney's fees as an independent claim or as a remedy arising from the claims set forth in the Verified Complaint. Their contention lacks merit. R. Williamson and Vicki's Vodka of Nevada have the right to recover attorney's fees as a remedy to some of the claims set forth in the Verified Complaint and, as set forth above, genuine issues of material fact do exist with such claims.

*R. Williamson Has Claims Against Woo Hoo*

Gunvalson and Woo Hoo finally contend that R. Williamson has no claims against Woo Hoo. That contention has no merit. Genuine issues of material fact exist about the capacity in which Gunvalson acted in connection with the Oral Agreement, the MIP Agreement, and the Settlement Agreement and, as a result, the liability of Woo Hoo for the actions of Gunvalson. As a result, summary judgment cannot be granted against R. Williamson and Vicki's Vodka of Nevada on their claims against Woo Hoo.

## CONCLUSION

R. Williamson and Vicki's Vodka of Nevada respectfully request that this Court deny the Defendant's Motion for the reasons set forth above.

Dated this 5th day of January 2015.

COHEN-JOHNSON, LLC

By: *Michael Hughes*
H. Stan Johnson, Esq.
Nevada Bar No. 00265
Michael V. Hughes, Esq.
Nevada Bar No. 13154
255 East Warm Springs Road, Ste. 100
Las Vegas, Nevada 89119
Telephone: (702) 823-3500
Facsimile: (702) 823-3400
*Attorneys for Robert Williamson III and Vicki's Vodka LLC*

# CERTIFICATION OF SERVICE

I hereby certify that I am an employee of Cohen-Johnson, that, on the 5th day of January 2015, I caused to be served upon the following persons by U.S. First-Class Mail and by Electronic Service pursuant to FRCP 5(b)(3) and LR 5-4 a true and correct copy of the **Response Memorandum of Plaintiff Robert Williamson, III And Plaintiff Vicki's Vodka, LLC In Opposition To Defendant Victoria Gunvalson's And Defendant Woo Hoo Productions, LLC's Motion For Summary Judgment Or, In The Alternative, Partial Summary Judgment, Of Member Claims By Robert Williamson, III And Vicki's Vodka, LLC, A Nevada Limited Liability Company**:

Sean P. Reis, Esq.
The Reiss Law Firm
Suite 300
30021 Tomas Street
Rancho Santa Margarita, California 92688
Email: sreis@reisfirm.com
*Attorney for Victoria Gunvalson, David Brooks Ayers, Cougar Juice Vodka, LLC, and Woo Hoo Productions, LLC*

Tony L. Abbatangelo
Law Offices of Tony Abbatangelo
Suite 220
611 South Sixth Street
Las Vegas, Nevada 89101
Email: tony@tonyabbatangelo.com
*Attorney for Victoria Gunvalson, David Brooks Ayers, Michael Nicholson, Cougar Juice Vodka, LLC, and Woo Hoo Productions, LLC*

Dean Y. Kajoika, Esq.
Kajioka & Associates
Suite 100
8530 West Charleston Blvd.
Las Vegas, Nevada 89117
Email: kajiokalaw@gmail.com
*Attorney for Angela Torres*

_/s/ Michael Hughes_
An employee of Cohen-Johnson, LLC