UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Robert Williamson, III, an individual,<br><br>    Plaintiff<br><br>vs.<br><br>Victoria L. Gunvalson, an individual; and David Brooks Ayers, an individual,<br><br>    Defendants<br><br>AND RELATED CROSS-ACTIONS | Base Case<br>No.: 2:13-cv-01019-JAD-GWF<br><br>Member case<br>No.:2:13-cv-02022-JAD-GWF<br><br>**Order Granting David Brooks Ayers's Motion for Summary Judgment**<br>**(Doc. 48)** |

    Defendant David Brooks Ayers moves for summary judgment against Robert Williamson III, to whom he sold his interest in a now failed vodka company in 2013.[1] Ayers presents evidence that he in no way breached the contract through which this sale was made nor did anything else that would give rise to the claims Williamson alleges. None of this evidence has been contradicted by Williamson, who has failed even to oppose Ayers's motion. Accordingly, I grant summary judgment in Ayers's favor on all claims.

**Background**

**I.    Base Case: Vicki's Vodka**

    Victoria "Vicki" Gunvalson has a recurring role on the television series *Real Housewives of Orange County*. Apparently hoping to cash in on her celebrity, she and two business partners tried to start a vodka business in 2012 called "Vicki's Vodka." One of these partners was plaintiff Robert Williamson III, a professional poker player who sues Gunvalson and others (including defendant David Brooks Ayers) for damages after they, in Williamson's view, reneged on their promise to move forward with the business.[2]

---

[1] *See* 2:13-cv-01019-JAD-GWF ("*Base Case*"), Doc. 48.

[2] *Base Case*, Doc. 1 at 4-8.

The other partner, Michael Nicholson, left the business sometime between July 2012 and March 2013; as a result, Gunvalson and Williamson became the sole owners, each having a 50% share.[3]

Gunvalson then gave defendant Ayers part of her 50% stake in the business, after which, in March of 2013, Ayers approached Williamson about selling it.[4] Ayers and Williamson negotiated the terms of the deal and ultimately decided that Ayers would sell Williamson this newly acquired stake—16.67% of the company—for $50,000.[5] They memorialized their agreement on May 6, 2013, in a Membership Interest Purchase Agreement ("MIP Agreement") that contained an integration clause.[6] The clause made clear that the MIP Agreement "contains the entire understanding of the parties" and "may be amended only by a written instrument executed by all of the parties."[7]

Williamson claims Ayers and Gunvalson used the MIP Agreement to extract additional money "in bad faith and without the intent to honor the intent of the transaction."[8] This is part of his more general argument that the pair "lure[d]" him into buying more of the business "without the good faith intent to move forward with the company and make it successful."[9] He therefore asserts the following claims against Ayers: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) misrepresentations, fraud, and omissions; (4) unjust enrichment; (5) promissory estoppel; (6) civil conspiracy; (7) and attorneys' fees.[10]

---

[3] *Id.* at 3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 20.

[8] *Id.* at 4-5.

[9] *Id* at 4.

[10] Attorneys' fees are a remedy, not a claim for relief. Accordingly, I do not address this request as a claim for relief.

**II.     Member Case: Defamation**

In a second lawsuit, Williamson filed additional claims against Ayers.[11] The complaint in this second suit alleges many of the same facts Williamson alleges in his first complaint. What Williamson adds are new parties and new claims: defamation, extortion, and intentional infliction of emotional distress.

Each of these claims centers around Williamson's allegations that Ayers told Douglas Dreisbach, who organizes an annual charity event Williamson co-founded, that Williamson is being investigated for embezzlement and has improperly taken funds from the event in the past.[12] Williamson also claims Ayers threatened to expose the affair Williamson was having with Angela Torres.[13]

Ayers denies these allegations. He argues, using sworn statements, that the allegations of embezzlement came from Torres[14] and that Williamson's wife learned of the affair independently, at which point Williamson "began a course of falsely accusing Ayers of 'extorting' money from him, in an apparent effort to cover up the affair."[15] He also argues that even if he had made the allegations of embezzlement, there is no evidence that he did so maliciously—an argument that, without any opposition from Williamson, remains uncontradicted.

As for Williamson's affair with Torres, Ayers submits undisputed testimony that when he and Williamson were friends, Williamson told Ayers that Torres was his mistress and often gave Torres money to "'calm her down' and keep her happy."[16] On two occasions, according to Ayers,

---

[11] *See* 2:13-cv-02022-JAD-GWF ("*Member Case*") Doc 1-1.

[12] *Member Case*, Doc 1-1 at 7.

[13] *Id.*

[14] "Ayers contacted Dreisbach after receiving a strange telephone call from an 'investigator' hired by Williamson, who told Ayers that Williamson's mistress, Angela Torres, had contacted [the charity] and alleged that Williamson had embezzled money." *Base Case*, Doc. 48 at 8.

[15] *Id.*

[16] *Base Case*, Doc 48 at 8.

1  Williamson even asked Ayers to deposit money in Torres's account for him.[17] But there is no
2  evidence that Ayers ever used this information to extract money from Williamson or in any other
3  way threatened to reveal the details of his affair.

## Discussion

### I.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[19] If reasonable minds could differ on material facts, summary judgment is inappropriate because summary judgment's purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[20]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[21] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[22] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[23]

---

[17] *Id.*

[18] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[19] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[20] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[22] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[23] Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

The failure to oppose a motion for summary judgment does not permit me to enter summary judgment by default, but the lack of a response is not without consequences.[24]  As Rule 56(e) explains, "If a party fails . . . to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion," and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. . . ."[25]

## II.     Breach of Contract

Williamson's breach-of-contract claim rests on his contention that he, Ayers, and Gunvalson entered into an oral agreement in June 2012 to start and promote "Vicki's Vodka" and a written agreement in March 2013.  But there is no admissible evidence to show that Ayers was ever part of either of those agreements.  Instead, the evidence shows that the only agreement Ayers made with Williamson is the MIP Agreement.[26]

The evidence also shows that Ayers fully complied with the terms of the MIP Agreement: he sold his 16.67% interest in Vicki's Vodka to Williamson for $50,000.[27]  Following the execution of the agreement, both parties confirmed via email that they were going to follow through with the transaction,[28] and Williamson's attorney even drafted a "Closing Agreement" further memorializing it.[29]  Williamson has presented no evidence to rebut these facts nor any that would in some other way demonstrate that Ayers breached.  I therefore grant summary judgment in favor of Ayers on Williamson's breach-of-contract claim.

## III.    Breach of the Covenant of Good Faith and Fair Dealing

Evidence to support Williamson's claim that Ayers breached the covenant of good faith and

---

[24] *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

[25] Fed. R. Civ. P. 56(e)(2) & (3); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

[26] *Base Case*, Doc. 48 at 9-10.

[27] *Id*.

[28] *Id*. at 9.

[29] *Id*. at 10.

fair dealing is similarly absent. In his complaint, Williamson alleges that Ayers "breached this duty by making false representations in a manner that was unfaithful to the purpose of the contract."[30] But since then, Williamson has not supported these allegations with any admissible evidence. And as Ayers points out, there is nothing in the MIP agreement that required Ayers to promote Vicki's Vodka—just the opposite. The whole reason Ayers sold his membership interest to Williamson was "so he would have nothing to do with the business going forward."[31] I therefore grant summary judgment in favor of Ayers on Williamson's breach-of-the-covenant-of-good-faith-and-dealing claim.

### IV.   Misrepresentations, Fraud, and Omissions against All Defendants

Williamson's claim for misrepresentation, fraud, and omission is based on the same unsupported allegations as his claims for breach of contract and breach of the covenant of good faith and fair dealing.[32] He contends that he was tricked into purchasing Brooks's membership interest, but he does not offer any evidence of the alleged deceit. Nor does he address the MIP Agreement's integration clause, which makes clear that no representations were made by either Ayers or Williamson outside the terms of the agreement itself. Accordingly, I grant summary judgment in favor of Ayers on Williamson's claim of misrepresentations, fraud, and omissions.

### V.   Unjust Enrichment

The MIP Agreement's integration clause—and, in fact, the MIP Agreement itself—also defeats Williamson's claim of unjust enrichment, a doctrine in quasi contract that applies to situations in which "there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but

---

[30] *Base Case*, Doc. 1 at 5-6.

[31] *Base Case*, Doc. 48 at 10.

[32] *See Base Case*, Doc. 1 at 6. ("[A]ll of the misrepresentations and omissions set forth [in Williamson's general allegations] were made to [Williamson], and relied on by [him] in making the purchase and investment described therein.").

should deliver to another or [should pay for]."[33] Because there is a legal contract in this case—the MIP Agreement—and no evidence of a separate quasi-contract, Williamson's unjust-enrichment claim fails. "To permit recover by quasi contract where a written agreement exists would constitute a subversion of contractual principles."[34] Accordingly, I grant summary judgment in favor of Ayers on Williamson's unjust-enrichment claim.

### VI. Promissory Estoppel

Judgment is warranted on Williamson's promissory-estoppel claim for similar reasons. Nevada follows the doctrine of promissory estoppel articulated in the Restatement (Second) of Contracts: "A promise [that] the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[35] There is only evidence of one promise in this case: the promise manifested in the MIP Agreement. Williamson has presented no evidence that Ayers failed to fulfil this promise. Nor has he demonstrated the existence of any additional promises. Indeed, the integration clause of the MIP Agreement explicitly states that no other promises were made by Ayers to Williamson. I therefore grant summary judgment in favor of Ayers on Williamson's promissory-estoppel claim.

### VII. Civil Conspiracy

Williamson argues that Ayers conspired with Gunvalson to trick him into buying Ayers's membership interest.[36] I have already found that there is no evidence of deceit. Williamson, through an arms-length negotiation, appears to have received all that he bargained for from Ayers: an additional stake in Vicki's Vodka. I therefore grant summary judgment in favor of Ayers on Williamson's civil-conspiracy claim.

---

[33] *Leasepartners Corp. v. Brooks Trust*, 942 P.2d 182, 189 (Nev. 1997) (citing 66 Am. Jur.2d Restitution § 3 (1973)).

[34] *Lipshie* v. *Tracy Investment Co.*, 566 P.2d 819, 824 (Nev. 1977).

[35] *Base Case*, Doc. 1 at 8.

[36] *Id.*

**VIII.   Civil Extortion**

Williamson claims Ayers "devised a scheme, using an acquaintance of [Williamson] as a pawn, to extort funds from [him]."[37] The acquaintance Williamson is referring to is Angela Torres, with whom Williamson was allegedly having an affair.

There are two problems with Williamson's claim.  First, the extortion statute in Nevada does not provide a civil remedy.[38]  Second, even if there were a civil remedy, Ayers has provided uncontradicted evidence that (1) he never devised a scheme or made any threats designed to coerce Williamson into giving him money and (2) Williamson gave money to Torres independent of any alleged pressure from Ayers.[39]  I therefore grant summary judgment in favor of Ayers on Williamson's civil extortion claim.

**IX.   Defamation and Intentional Infliction of Emotional Distress**

Williamson alleges, in his defamation claim, that Ayers contacted Doug Dreisbach in June 2013 and represented to him that Williamson was being investigated for embezzlement and had already embezzled funds from an annual charity event Dreisbach oversees.  To succeed on this claim, Williamson would have to show that (1) Ayers made a false and defamatory statement about him; (2) the statement was an unprivileged publication to a third party; (3) Ayers was at least negligent; and (4) Williamson has suffered damages that are actual or presumed.[40]

Williamson has not provided evidence to satisfy any of these elements, much less all of them. Nor has he provided evidence to satisfy any of the elements of his final claim: intentional infliction of emotional distress.  He has not shown (1) that Ayers engaged in outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) that he suffered severe or

---

[37] *Member Case*, Doc. 1-1 at 15.

[38] *See* N.R.S. 205.320; *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (finding that a private right of action under a criminal statute has been rarely implied and noting that when a private right of action has been implied, "there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone").

[39] *See Base Case*, Doc. 48 at 13-14.

[40] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459 (Nev. 1993).

emotional distress; and (3) actual or proximate causation.[41]  I therefore grant summary judgment in favor of Ayers on Williamson's claims for defamation and intentional infliction of emotional distress.

### Conclusion

Accordingly, and for the foregoing reasons, IT IS HEREBY ORDERED that Ayers's Motion for Summary Judgment **[Doc. 48.]** is **GRANTED**.

DATED June 25, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[41] *See Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).