Mark D. Wesbrooks (AZ State Bar No. 018690)
**The Wesbrooks Law Firm, P.L.L.C.**
15396 N. 83rd Ave., Ste. C100
Peoria, Arizona 85381
Phone: (602) 262-0390
Fax: (888) 477-5598
mwesbrooks@gmail.com; wesbrooksefax@gmail.com
(Admitted Pro Hac Vice)
Attorney for Plaintiffs, Robert Williamson, III and Vicki's Vodka, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT WILLIAMSON, III an individual, et al.<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA L. GUNVALSON, an individual; DAVID BROOKS AYERS, an individual, et al.<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | BASE CASE NO.:<br>2:13-cv-01019-JAD- GWF<br><br>MEMBER CASE NO.:<br>2:13-cv-02022-JAD-GWF<br><br>**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

A bench trial is to be held on June 15, 2021.  Plaintiffs, Robert Williamson, III and Vicki's Vodka, LLC ("Plaintiffs") are represented at trial by Mark Wesbrooks. Defendant, Victoria Gunvalson, is represented by Michael Mazur. Plaintiffs are also seeking final default judgments against Defendants, Sweetwater Distillers, Inc. d/b/a Stillwater Spirits ("Sweetwater") and Cougar Juice Vodka, L.L.C. ("CJ").

**STANDARD**

During a bench trial, "[i]f a party has been fully heard on an issue . . . and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). The Court's judgment "must be supported by findings of fact and conclusions of law as required by Rule 52(a)." Id. "In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006).

**PROPOSED FINDINGS OF FACT**

The present case began as a consolidated action involving a variety of business-related and personal claims among numerous parties.

Complaint in Base Case

On June 7, 2013, Robert Williamson, III ("Williamson") filed the Complaint in the base case, number 2:13-cv-01019-JAD-GWF, against Victoria Gunvalson ("Gunvalson") and David Brooks Ayers ("Ayers") for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) misrepresentations, fraud and omissions; (4) unjust enrichment; (5) promissory estoppel; (6) civil conspiracy; and (7) attorneys' fees. On July 15, 2013, the Court dismissed Gunvalson from the Base Case.

On November 20, 2013, Ayers filed a Counterclaim and Third-Party Complaint against Williamson, Cate Williamson ("C. Williamson") and Angela Torres ("Torres") for slander.  On November 19, 2014, all claims against Torres were dismissed [Doc. 52]. by Court Order. The Court has dismissed all claims by and between Williamson and Ayers, removing Ayers as a party from litigation.  On October 23, 2018, the Court dismissed all claims between Ayers and Williamson, including Ayers claims against Cross-Defendant Cate Wakem-Williamson [Doc. 158].

Complaint in Member Case

On September 6, 2013, R. Williamson and Vicki's Vodka, LLC, a Nevada Corporation ("Vicki's Vodka") filed a Complaint in the member case, number 2:13-cv-02022-JAD-GWF, against Gunvalson, Ayers, Michael Nicholson ("Nicholson"), Cougar Juice Vodka, LLC ("CJ"), Sweetwater Distillers, Inc. ("SDI"), and Woo Hoo Productions, LLC ("Woo Hoo") for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) misrepresentations, fraud and omissions; (4) unjust enrichment; (5) promissory estoppel; (6) civil conspiracy; (7) civil extortion (Ayers only); (8) slander (Ayers only); (9) intentional infliction of emotional distress; (10) attorney's fees; and (11) misappropriation and conversion of funds.

Gunvalson's And Nicholson's Counterclaims

In Member Case On November 1, 2013, Gunvalson and Nicholson filed counterclaims against R. Williamson and Vicki's Vodka for (1) common law fraud; (2) breach of fiduciary duty; (3) unauthorized taking and retention of data (NRS 205.473 et

seq.); (4) theft of data and breach of right of privacy, 18 U.S.C. § 2701 et seq.; (5) unlawful activities concerning computers, NRS 205.4765 et seq.; (6) civil extortion; (7) conversion; (8) intentional infliction of emotional distress; (9) unauthorized use of name and likeness, NRS 597.810; (10) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.; and (11) Racketeering, NRS 207.350 et seq.  Nicholson has presented crossclaims against Williamson's spouse, Cate-Wakem Williamson ("Cate").

Defaulting Parties

As to Plaintiffs' claims, Defendants Sweetwater and Cougar Juice defaulted. The Clerk of the Court has entered default with respect to such Defendants, with the Court deferring entry of default judgment after presentation of evidence of Plaintiff's damages through trial proceedings [See Doc. 194].

Summary Judgment Rulings

On August 25, 2015, the Court made rulings, granting in part and denying in part, Gunvalson and Woo Hoo Productions, LLC's Motion for Summary Judgment [Doc 82]. The Court granted summary judgment against Williamson with respect to his claims for unjust enrichment (Count IV), civil conspiracy (Count VI), and intentional infliction of emotional distress (Count IX), yet found triable issues of fact precluding summary judgment as to Williamson's claims for breach of contract (Count I); breach of the covenant of good faith and fair dealing (Count II); misrepresentations, fraud, and omissions (Count III); and promissory estoppel (Count V).

<u>Findings of Fact based on Stipulations and the Evidence.</u>

Victoria Gunvalson ("Gunvalson") is a television celebrity, having appeared for several years on the television show: "The Real Housewives of Orange County®" ("Housewives"). At relevant times, Gunvalson held the expectation and maintained contractual rights to continue as a participant on the Housewives show, through her relationship with Bravo Network and others holding rights to such show. Incidental to her role in Housewives, Gunvalson has made public appearances and routinely provides interviews on television programs, including Bravo Media television show "Watch What Happens Live with Andy Cohen®.

Gunvalson is a well-known celebrity, having appeared as a regular cast member for over fourteen (14) years on Real Housewives of Orange County®, which is the majority of the Bravo Media series.

Plaintiff, Robert Williamson, III. ("Williamson") has gained notoriety as a world-famous poker player, known as a celebrity for his high tournament winnings and notable appearances and hosting of television broadcast gaming shows. Williamson is acknowledged as celebrity through the World Series of Poker and World Poker Tours. Williamson also has background and experience in business management and marketing, having owned and operated businesses throughout his career. Williamson has maintained special relationships and contacts in the spirits marketing and distribution industry, and through his connections in the gaming world.   Williamson has experience and has been significantly involved in marketing and distributions of celebrity-associated products.

Because of the special contacts, talents, and branding that Williamson and Vicki possessed, they collectively agreed to form a business partnership that would ultimately become known as Vicki's Vodka™. Gunvalson introduced Williamson to spirits manufacturer, Michael Nicholson ("Nicholson") who joined the venture, with that Nicholson contributing a modified formula of his successful Cougar Juice Vodka, which Nicolson agreed would be contributed through design and recipe formula into the new Vicki's Vodka brand.

Williamson, Gunvalson, and Nicholson ("Members") were the initial members of the venture, ultimately to become known as "Vicki's Vodka."  Such Members initially met in a conference room at the business center of Williamson's condominium in Las Vegas, on June 3, 2012.  The Members generated Minutes of the meeting documented their agreed ownership, commitments and expected obligations.  A second meeting was held between the Members on July 20, 2012.  Additional Minutes of the meeting were generated further defining the agreed obligations of the Members. Such commitments included additional capital contributions by Williamson and negotiated public appearances by Gunvalson, some of which would include Williamson as an attendee guest.

Gunvalson, Williamson, and Nicholson formed an agreement in partnership, each committing and being obligated to perform essential functions necessary for coownership of the enterprise of Vicki's Vodka to become a Brand with significant position in the marketplace and profits related thereto.   This formed association was within the

definition of partnership as defined by N.R.S. Sec. 87.060, being "an association of two or more persons to carry on as co-owners a business for profit."  The association of the three members was based upon Williamson providing capital and distribution channels, Nicholson providing formula, producing and blending of Vicki's Vodka spirits, and Gunvalson being the face of Vicki's Vodka through her contribution of name, image, celebrity notoriety, which contemplated ongoing negotiation of marketing opportunities through her cast-member status on a Bravo Network's televised programs.

Vicki's Vodka LLC ("Vicki's Vodka") was formed originally with Gunvalson owning 33%, Nicholson owning 33% and Williamson owing 34% member interests.

As Members of Vicki's Vodka LLC, Gunvalson, Williamson, and Nicholson agreed to make substantial investments of time, money, and effort, as embodied in written documents and exchange of communications.

It was agreed that Robert Williamson would provide capital investments to fund product development, government approval and licensing, trademarking, design, and manufacturing costs to develop the products of Vicki's Vodka.  Over time, Williamson made investments of funds to Vicki's Vodka and paid expenses, including legal fees, totaling the sum of $465,796.52 to or on behalf of Vicki's Vodka.

Throughout late 2012 and 2013, meetings and public appearances were made by Williamson and Gunvalson promoting Vicki's Vodka products.  Williamson and Gunvalson appeared on nationally broadcast episodes of Real Housewives of Orange County® ("Real Housewives")and Watch What Happens Live with Andy Cohen®, where

Williamson and Gunvalson were introduced and discussed Vicki's Vodka products and flavors.

Nicholson, on behalf of Cougar Juice ("CJ") and Sweetwater Distilleries d.b.a. Stillwater Spirits ("Sweetwater") agreed to distill and blend the vodka products of Vicki's vodka, with Sweetwater gaining licensing and controlling distribution of the sale of Vicki's Vodka products for Vicki's Vodka, L.L.C.

Cougar, owned and controlled by Nicholson, is a blender and/or manufacturer of spirits, with Sweetwater engaging in licensing and distribution of product to hundreds of stores throughout specific states in the United States.

In 2012, Gunvalson and Nicholson provided to Williamson CPA-prepared sales forecast that Vicki's Vodka would net over $8 million in sales with an annual net profit of $2.4 million by the third year (2015) of manufacturing, distribution, and marketing.

Pursuant to his commitment, Williamson made financial contributions and sought to develop relationships in the wholesale and retail distribution channels for distribution. Williamson sought agreements for distribution through Total Wine and More® having distribution and retail stores throughout the continental United States.   Williamson attended public appearances with Gunvalson and Vicki's Vodka products to promote the Brand.  Gunvalson and Williamson obtained commitments from various casinos in the Las Vegas area to carry Vicki's Vodka as part of their inventory throughout Nevada.

Members of Vicki's Vodka expressly and implicitly made promises and representations to other Members that they would dedicate their loyalties and best efforts

to perform their respective obligations and commitments for the common goal of Vicki's Vodka reaching consumers through retail sales in the U.S. vodka market.

At Nicholson's request, Sweetwater applied for and procured label approval by the licensing authority.

As part of the members' respective commitments, Nicholson, on behalf of CJ and Sweetwater, provided the recipe for Cougar, with modifications to establish the various flavors of Vicki's Vodka. Such recipe was agreed to become and did in fact become the property of Vicki's Vodka LLC.

Vicki's Vodka has labels, bottles, shipping boxes, and other artistic intellectual property associated with the physical product were procured and paid for by Vicki's Vodka and Williamson, approved by licensing authorities to be utilized in the marketing and sale of Vicki's Vodka products. The Vicki's Vodka website was finalized and approved by Gunvalson, whose likeness and persona were the unique key component to the product line.

A dispute arose between Nicholson and other Vicki's Vodka members, resulting in Nicholson voluntarily surrendering his member interest back to Vicki's Vodka, ultimately resulting in Williamson and Gunvalson holding equal 50% interests in Vicki's Vodka. Thereafter, Gunvalson transferred part of her interest (a 16.66% interest) to her then boyfriend, David Brooks Ayers ("Ayers") who, in March 2013, sold all his interest to Williamson for the sum of $50,000.00. This transfer of interest resulted in Williamson holding 66.66% of Vicki's Vodka with Gunvalson holding 33.33% of the company.

Vicki's Vodka produced first run/shipments of Vicki's Vodka generating thousands of bottles of vodka are ready to be delivered to retail shelves.

Gunvalson, Williamson, and Vicki's Vodka engaged in a campaign of public promotion, which included entering the product into the San Francisco International Spirits Competition, whereby the product won a Silver Award, and entering the product into the Beverly Hills International Spirits Competition, where it won the Gold Award for flavor and design,

Williamson and Vicki's Vodka undertook efforts to gain compliance of labeling requirements, including actual label approval, through the United States Treasury Department, which caused Williamson to incur significant funds, in addition to his time and effort in label development and approval. Final approval was provided with respect to labels for the regular flavor blend and orange flavor blend of Vicki's vodka.

26,000 empty bottles were imported from China, ready to be filled and capped as Vicki's Vodka as well as over 1000 gallons of vodka being produced, with Williamson making payment for the products and blending.   Each bottle and box had a photograph of Gunvalson's likeness, associating her unique identity with the Brand.

Williamson and Vicki's Vodka arranged, through Gunvalson, for a launch party to occur at Gunvalson's home and to be broadcast on Housewives.   Video footage was taken of the first product launch, documenting the first bottle of Vicki's Vodka of to be produced from the distillery.   Williamsons and Gunvalson made appearances for such footage with both events being broadcast on episodes of Real Housewives.

Vicki's Vodka was mentioned and promoted throughout television and print outlets covering Gunvalson and the product line throughout Winter and Spring of 2013. Promotional launching events were scheduled, including the Housewives' Season 12 Finale with filming in the back yard of Gunvalson's home in Orange County, California.

Bravo Network permitted the brand of Vicki's vodka to be discussed and integrated into the Real Housewives of Orange County television series, permitting broadcasts with the Vicki's Vodka being discussed, promoted and displayed as part of the content of such television show.

Over considerable time, Williamson dedicated great time and expense in undertaking to develop the Vicki's Vodka in development and branding of various products, including various flavors of vodka. Much time was expended in selection of the bottle design, graphics, website, retail brand of products, and in establishing relationships with retailers (expanded distribution) who would agree to promote and sell Vicki's Vodka products to consumers.

When a personal dispute arose between Williamson and Gunvalson concerning Gunvalson's boyfriend, Ayers, on or about May 10, 2013, Gunvalson, through her counsel, Richard Brull, provided a cease-and-desist notice that Gunvalson no longer authorized her name, likeness or voice to be used in connection with Vicki's Vodka. Gunvalson's demand halted production and flow of product to market.  Approximately four weeks later, on June 7, 2013, Williamson filed the Base-Case in this Division.

Within weeks of the filing of the Base Case, on or about July 15, 2013, Gunvalson and Williamson reached a Settlement embodied in a signed Settlement Agreement. Gunvalson represented through such document that she would undertake effort to again market and sell Vicki's Vodka products. Following the Settlement Agreement, Williamson dismissed his claims against Gunvalson and her production company Woo Hoo Productions ("Woo Hoo") from the Base Case.

Gunvalson executed the Settlement Agreement while in Andy Cohen's studio in New York, N.Y. Both Gunvalson and Williamson appeared together on the show to promote the product and to inform the viewing audience that all disputes had been settled between them. Following the live television show appearance, Williamson and Gunvalson spent the evening together having dinner, and celebrating with others present.

Following the foregoing events, through representatives, Gunvalson again communicated a cease and desist refusing to allow Vicki's Vodka to move forward using her likeness. Thereafter, the Member litigation was filed, which was ultimately consolidated into the Base case.

Gunvalson was the face of Vicki's Vodka, and an essential nonreplaceable asset to the partnership enterprise. Gunvalson continued to refuse to allow her likeness to be used in connection with promotion and sale of Vicki's Vodka products.

Bottled Vicki's Vodka brand vodka were not delivered to wholesaler and retailers because of the unresolved dispute that has continued through the trial of this action.

**II.      Conclusions of Law.**

**Defendants Sweetwater and Cougar.**

Despite being properly served with the Summons and Complaint in accordance with the Federal Rules of Civil Procedure, and despite multiple mailings and notices regarding filings and scheduling of prior hearings related to default proceedings, Cougar and Sweetwater have wholly made default, having not filed required responsive pleadings.   The only issue with respect to such Defendants is the amount and measure of damages.

Cougar was personally served on November 12, 2013. (See Motion for Entry of Clerk's Default, Exhibit A, Affidavit of Service [Doc. 160]).  On December 6, 2013, Plaintiffs filed their *first* Motion for Entry of Clerks Default (Doc. 8) and the Clerk entered the default on December 9, 2013 (Doc. 10).  On December 13, 2013, Defendant Cougar Juice Vodka, LLC filed its Motion to Set Aside Clerk's Entry of Default (Doc. 11). On February 14, 2014, the Court granted Defendant Cougar Juice Vodka, LLC's Motion to Set Aside the Clerk's Default and ordered an Answer be filed within 10 days. (Doc. 25) As of the date of this filing, Despite the Court vacating the Clerk's *first* Entry of Default, Defendant Cougar Juice Vodka, LLC has not plead or otherwise defended the Complaint.

Sweetwater was personally served on November 12, 2013. See Exhibit A, Affidavit of Service. On December 6, 2013, Plaintiffs filed their First Motion for Entry of Clerks Default (Doc. 9) and the Clerk entered the default on December 9, 2013 (Doc. 10).

As of the date of this filing, Sweetwater has not plead or otherwise defended the Complaint.

The only issue as to defaulting defendants is the measure of Plaintiff's damages.

**Agreements, Promises, and Partnership Obligations.**

The Complaint alleges partnership agreements with the purpose of producing, marketing and selling the product line of vodka spirits under the trademarked name of "Vicki's Vodka." It is alleged that from the time of formation, there were three agreed owners, each of which who would hold relatively equal ownership of the later formed business enterprise, Vicki's Vodka LLC.[1]   The Complaint alleges an agreement for co-ownership of a business for profit with covenants and agreements by each of the three members/partners.  The evidence received by Court is sufficient to establish partnership formation and accompanying duties of loyalty prescribed by law.

**Breach of Contract**

The Complaint alleges a breach of contract on the part of Gunvalson.  Contract is supported by numerous writings and expression of agreements as to the role of partners in the established partnership.   By establishing the respective commitments of the members in forming partnership through co-ownership, breaches may be established. Partnership obligations were established through writings and testimony, from which the Court may find breaches of such material agreements and loyalties of members.

---

[1]   RW III later purchased the additional interest transferred by Gunvalson to her boyfriend, Ayers, causing his total member interest to be 66.66% of the total business.

In a diversity case, generally a federal court will apply the substantive law of the forum state, in this case, Nevada. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).   N.R.S. 87.060 defines a partnership as "a partnership is an association of two or more persons to carry on as co-owners a business for profit."  The Complaint adequately alleges agreements sufficient to state a cause of action for breach of such agreements, breach of promises, and promissory estoppel / reliance-based remedies.

**Promissory Estoppel and Reliance**

Based upon the promises and agreements made, Plaintiff Williamson moved ahead with the business of Vicki's Vodka (Complaint, para. 17), expending substantial funds in excess of $300,000.00.[2] (Complaint, para. 19).   The Complaint alleges that "[Williamson] has fully conformed to and complied with each and every term, condition, provision and obligation required to be performed under and pursuant to the terms of the agreements." (Complaint, para. 68).  The material promises were made as inducements to the transaction, which caused Plaintiff [Williamson] to expend $465,796.59 in reliance upon the promises of Gunvalson.  The Complaint alleges, and the evidence supports, that Williamson paid such monies in addition to extraordinary commitment of time, effort, and energy for purposes of seeing the value of his investment. Evidence received by the Court supports a finding that the investment ended with Gunvalson ordering a cease and desist in allowing her name and likeness to be used

---

[2]     Actual out-of-pocket expenses were in the amount of $465,796.59.

after substantial funds and efforts had been expended by Williamson.   The importance of Gunvalson's ongoing efforts to promote the products of Vicki's Vodka™ is highlighted by the terms of the July 15, 2013, Settlement Agreement, wherein her commitments were restated.

Sufficient evidence is provided that Williamson acted to his detriment in contributing his time, toil, money and effort towards the project, and that he relied on multiple promises and assurances of Gunvalson, including her commitment to allow her likeness and name to be associated with the product in exchange for her percentage ownership. Threats to end the project by her refusal to allow her likeness unless Williams renegotiated ownership and control terms after Gunvalson transferred away one-third of her interest to her boyfriend, was an anticipatory breach that would cause any reasonable co-owner to believe that further efforts of time, money and effort would be futile.

Gunvalson is liable to Williamson under the doctrine of promissory estoppel.

Williamson is entitled to recover actual compensatory losses proven, in addition to the expectation value of his investment.

Evidence was received by the Court establishing a reasonable probability that the product / investment would have achieved status as demonstrated through other, not only similar, but mirror image product lines of other cast members of the Bravo Housewife Series.  Persuasive credible evidence received by the Court suggests that the value of the investment, but for the neglects, breaches, and default, would reasonably be in the sum

today of $64,000,000.00, with the value of Williamson's investment as two-thirds owner to be in the sum of $42,666,666.66.

**Fraud and Misrepresentation**

Fraud and misrepresentation causes of action are alleged that various paragraphs of the Complaint (i.e. Amended Complaint paragraphs 47, 80 through 85. The Complaint alleges false statements of material fact which Williamson relied upon to his detriment (paragraph 47 and its subparts). Furthermore, the Complaint alleges at "COUNT III (Misrepresentations, Fraud and Omissions against All Defendants)" that "all of the misrepresentations and omissions set forth above were made to Plaintiffs and relied upon by Plaintiffs in making the purchase and investment described herein by [Williamson]" (Complaint, para. 81).  Furthermore, the Complaint alleges that such misrepresentations and omissions were material and caused Plaintiffs to be misled about the true nature of the investment. "Plaintiffs relied in good faith on the misrepresentations and omissions to his detriment." (Complaint, paragraph 82).  It was alleged against all Defendants, that "the Defendants knew or should [have known] that such representations were false. (sic)" (complaint, para. 83).  It is further alleged that such inducement caused plaintiff to expend funds in excess of $300,000. (Complaint para. 85).  Furthermore, the Complaint specifically seeks all compensatory, incidental damages and punitive damages recoverable by law as may be shown through the evidence.

**Unjust Enrichment.**

The Complaint alleges, at COUNT IV (Unjust Enrichment as Against All Defendants), that Plaintiff complied with each and every term, condition, provision, obligation, and covenant required to be performed by them under the Agreements. (Complaint, paragraph, 88), and that the result of conduct on the part of the Defendants caused them to become unjustly enriched to sums that may be established by the evidence.   Complaint, (Paragraphs 87 to 91).   Gunvalson has expended efforts she contracted to be for the benefit of Vicki's Vodka for other products and to the financial reward of other investors profiting from her status as cast-member to the financial detriment of Williamson and Vicki's Vodka, L.L.C.

**Plaintiffs' Damages.**

Plaintiff has met his burden of proof that but for neglects, defaults, and breaches, there would have more likely than not been a viable company of Vicki's Vodka LLC and its intellectual property products. The product was developed, marketed, and promoted up to the point where Defendants are alleged to have committed breaches and tortious acts causing failure and cessation of Vicki's Vodka as a viable company. The evidence supports the finding that, but for Defendants' neglects and defaults, Vicki's Vodka spirits would have been marketed, distributed and sold through viable business of Vicki's Vodka.   The evidence supports the claim that Plaintiff, who performed his obligations and commitments as part of the agreement, was deprived of his investment because of refusal on the part of Gunvalson to perform her agreed obligations, that were

exclusively within her control.  Given the unique identity of the products in the Vicki line, there would be no viable replacement option for Williamson and Vicki's Vodka to replace or cover damages through other means.  The evidence supports that Gunvalson and her then boyfriend, Brooks Ayers, induced Williamson to invest through providing Nicholson and Sweetwater's projected Sales Projections, projecting to Williamson that the Vicki's Vodka project would net over $2.4 million per year by the third year of production and distribution of vodka products (2015), with rising net profits thereafter, given Gunvalson's celebrity and Nicholson/Sweetwater's established distribution channels utilized with other liquor spirits in its distribution chain.

Expert analysis and data received in evidence, using a model industry analysis of an almost identical spirit product launched through the same channels, with marketing and promotion on the Bravo Network's New Jersey Housewives series, was compelling in understanding the value of the investment.

Plaintiff lost the value of his investment.   Plaintiff has established that Gunvalson's actions and refusal to allow her involvement was the cause of derailment and destruction of the Vicki's Vodka project. The evidence reveals that thousands of Vicki's Vodka products in three flavors were blended, bottled, and ready for distribution.

Vicki's Vodka's product was brought to a full culmination of a marketable and distributable product. It is reasonable to assume based upon the credible evidence received that, but for the defaults, breaches, and tortious conduct on part of Gunvalson.

Vicki's Vodka would have launched and been in full distribution providing the parties a full expectation of monetary benefits.

The evidence supports the finding that Williamson paid for design, logos, trademarking, attorney fees for licensing and distribution, transportation, storage of product, batches of vodka bottled for distribution prior to breaches, in addition to his time labor and efforts in fulfilling his role on behalf of Vicki's Vodka. The evidence supports the finding that Vicki's Vodka would have been a viable product and valuable intellectual property, which the evidence supports would in reasonable probability have had a present value of $61,000,000.00, and that Williamson's two-third ownership would have caused the value of his investment to be in the sum of $42,666,666,66.

DATED this 6th day of June 2021,

**THE WESBROOKS LAW FIRM, P.L.L.C.**

By: /s/*Mark D. Wesbrooks*

Mark D. Wesbrooks, Esq.
*Attorneys for Robert Williamson,*
*Catherine Williamson, & Vicki's Vodka, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Mark D. Wesbrooks, hereby certify that on June 6, 2021, I filed through the Court's ECF system and served either through the ECF system or by electronic mail the foregoing document described as: **PLAINTIFFS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** using the Court's electronic filing system. A copy of the foregoing document(s) will be served via the Court's electronic filing system on interested parties in this action, or by email/regular mail as follows:

**2:13-cv-01019-JAD-EJY Notice has been electronically mailed to:**

Tony L Abbatangelo (Terminated)      Tony@paulpaddalaw.com, arelicep@paulpaddalaw.com

Edward Randall Miley   emiley@mileylaw.com

Michael D. Mazur      Michael.Mazur@roselbrand.com, Mitchell.Billings@roselbrand.com

*/s/Mark Wesbrooks*