MARK D. WESBROOKS (AZ State Bar No. 018690)
**THE WESBROOKS LAW FIRM, P.L.L.C.**
15396 N. 83rd Ave., Ste. C100
Peoria, Arizona 85381
Phone: (602) 262-0390
Fax: (888) 477-5598
mwesbrooks@gmail.com; wesbrooksefax@gmail.com
(Admitted Pro Hac Vice)
Attorney for Plaintiffs, Robert Williamson, III and Vicki's Vodka, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT WILLIAMSON, III an individual, et al.<br><br>Plaintiff,<br><br>vs.<br><br>VICTORIA L. GUNVALSON, an individual; DAVID BROOKS AYERS, an individual, et al.<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | BASE CASE NO.:<br>2:13-cv-01019-JAD- GWF<br><br>MEMBER CASE NO.:<br>2:13-cv-02022-JAD-GWF<br><br>**PLAINTIFF'S FINAL TRIAL MEMORANDUM** |

COMES NOW, Robert Williamson, III. and Vicki's Vodka, L.L.C., in accordance with the Court's directive through Order dated June 8, 2021 [Doc. 204] and files Plaintiff's Final Trial Memorandum, addressing matters relevant to the bench trial of issues in this action.

**I.     PLEADINGS AND PRE-TRIAL DISPOSITION OF CLAIMS**

1..     **Pleadings and Status of Claims.**

<u>Base Case</u>

Plaintiff, Robert Williamson filed a Verified Complaint in the Nevada District Court, which was removed to this Court in the Base Case. (Doc. 1). Williamson's Verified Complaint alleges claims only against Victoria Gunvalson ("Gunvalson") David Brooks Ayers ("Ayers"). Claims of Williamson against Gunvalson were dismissed through Notice of Voluntary Dismissal filed on July 15, 2013. (Doc. 6), leaving only unresolved claims of Williamson against Ayers.

After removal of the action, Defendant Ayres filed an Amended Answer, with Counterclaim against Williamson and Third-Party Claim against Williamson's spouse Cate Wakem-Williamson ("Cate") and Angela Torres ("Torres") (Doc. 10-1). Ayers counterclaims were later amended through First Amended Counterclaim (Doc. 66). All claims by and between Williamson, Cate, Vicki's Vodka, and Ayers were dismissed through summary judgment ruling favorable to Ayers (Doc. 78) and through the Order Granting Stipulation for Dismissal dated October 23, 2018. (Doc. 158). Ayers claims against Torres were removed through notice of settlement Filed November 12, 2015 (Doc. 83), although Plaintiff's Counsel could not locate a formal order of dismissal.

As a result of the foregoing, all claims raised by the Verified Complaint initiating the Base Case have been dismissed, leaving the Verified Complaint filed in the Member Case to serve as the live pleading for pending claims.

Member Case:

On November 1, 2013, the Member Case 2:13-cv-02022, was commenced through removal of the Complaint and other documents filed in state court. Such case was commenced though the filing of the Complaint by Williamson and Vicki's Vodka ("VV") against Gunvalson, Ayers, Michael Nicholson (Nicholson"), Cougar Juice Vodka LLC ("CJ"), Sweetwater Distillers, Inc. dba Stillwater Spirits ("Sweetwater") and Woo Hoo Productions LLC. ("Woo Hoo") (Member Case, Doc. 1, Complaint para. 1 through 8).

Consolidated Base Case and Live Pleadings

On February 4, 2014, the Member Case was consolidated with the Base Case, with all subsequent filings and matters occurring through the consolidated case, still identified as the Base Case. (Doc. 23).

The Verified Complaint filed in the Member Case (Doc. 1) remains as the live pleading as to Williamson and VV's affirmative claims against Gunvalson, Woo Hoo, CJ and Sweetwater.

**II.   CLAIMS TO BE ADJUDICATED AT TRIAL**

Defaults (Undisputed Claims):

Despite being properly served with the Summons and Complaint in accordance with the Federal Rules of Civil Procedure, and despite multiple mailings and notices regarding filings and scheduling of prior hearings related to default proceedings, CJ and Sweetwater have wholly made default, having not filed required responsive pleadings.

At the time this Court schedule default proceedings, Plaintiff filed Plaintiff's Prehearing Brief Re: Default Proceedings and Proposed Form of Judgment (mistakenly identified in the Court Docket as "Trial Brief." (Doc.193). Plaintiff incorporates the content of such Brief herein by reference for all purposes.

Adhering of October 2, 2020, the Court scheduled evidentiary hearing for purposes of considering Plaintiff's proposed default judgments. The Court informed that that factual findings regarding damages would be reserved for time of trial, given the fact that trial was to be conducted against remaining parties, which would entail findings and conclusions related to plaintiff's claims of damages.

At a previous hearing in the case, Counsel, Michael Mazer, announced that not only was he serving as counsel for Gunvalson, but that he was serving as counsel for CJ, a defaulting defendant. Plaintiff objects to participation in trial proceedings by CJ absent timely and proper pleadings.

<u>Unresolved Disputed Claims to be Tried:</u>

The Court is to try those affirmative claims of Williamson and VV against Gunvalson and Woo Hoo, other than claims upon which summary judgment was granted through summary judgment rulings (Doc. 82). It is unknown if Gunvalson or Nicholson will be proceeding with Counterclaims.

///

///

Summary Judgment Rulings

On August 25, 2015, the Court made rulings, granting in part and denying in part, Gunvalson and Woo Hoo Productions, LLC's Motion for Summary Judgment [Doc 82]. The Court granted summary judgment against Williamson with respect to his claims for unjust enrichment (Count IV), civil conspiracy (Count VI), and intentional infliction of emotional distress (Count IX), yet found triable issues of fact precluding summary judgment as to Williamson's claims for breach of contract (Count I); breach of the covenant of good faith and fair dealing (Count II); misrepresentations, fraud, and omissions (Count III); and promissory estoppel (Count V).

Agreements, Promises, and Partnership Obligations.

**Breach of Contract**

The Complaint alleges a breach of contract on the part of Gunvalson.  Contract is supported by numerous writings and expression of agreements as to the role of partners in the established partnership.  By establishing the respective commitments of the members in forming partnership through co-ownership, breaches may be established. Partnership obligations were established through writings and testimony, from which the Court may find breaches of such material agreements and loyalties of members.

In a diversity case, generally a federal court will apply the substantive law of the forum state, in this case, Nevada. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).  N.R.S. 87.060 defines a partnership as "a partnership is an association of two or more persons to carry on as co-owners a business for profit." The

Complaint adequately alleges agreements sufficient to state a cause of action for breach of such agreements, breach of promises, and promissory estoppel / reliance-based remedies.

**Promissory Estoppel and Reliance**

Based upon the promises and agreements made, Plaintiff Williamson moved ahead with the business of Vicki's Vodka (Complaint, para. 17), expending substantial funds in excess of $300,000.00.[1] (Complaint, para. 19). The Complaint alleges that "[Williamson] has fully conformed to and complied with each and every term, condition, provision and obligation required to be performed under and pursuant to the terms of the agreements." (Complaint, para. 68). The material promises were made as inducements to the transaction, which caused Plaintiff [Williamson] to expend $465,796.59 in reliance upon the promises of Gunvalson. The Complaint alleges, and the evidence supports, that Williamson paid such monies in addition to extraordinary commitment of time, effort, and energy for purposes of seeing the value of his investment. Evidence received by the Court supports a finding that the investment ended with Gunvalson ordering a cease and desist in allowing her name and likeness to be used after substantial funds and efforts had been expended by Williamson. The importance of Gunvalson's ongoing efforts to promote the products of Vicki's Vodka™ is highlighted by the terms of the July 15, 2013, Settlement Agreement, wherein her commitments were restated.

---

[1]   Actual out-of-pocket expenses were in the amount of $465,796.59.

Sufficient evidence is provided that Williamson acted to his detriment in contributing his time, toil, money and effort towards the project, and that he relied on multiple promises and assurances of Gunvalson, including her commitment to allow her likeness and name to be associated with the product in exchange for her percentage ownership. Threats to end the project by her refusal to allow her likeness unless Williams renegotiated ownership and control terms after Gunvalson transferred away one-third of her interest to her boyfriend, was an anticipatory breach that would cause any reasonable co-owner to believe that further efforts of time, money and effort would be futile. Gunvalson should be held liable to Williamson under the doctrine of promissory estoppel. Williamson should recover his actual compensatory losses proven, in addition to the expectation value of his investment.

Evidence presented may lead the trier of fact to conclude that there was reasonable probability that the product / investment would have achieved status as demonstrated through other, not only similar, but mirror image product lines of other cast members of the Bravo Housewife Series. Persuasive credible evidence is in the record supporting a finding that the value of the investment, but for the neglects, breaches, and default, would reasonably be in the sum today of $64,000,000.00, with the value of Williamson's investment as two-thirds owner to be in the sum of $42,666,666.66.

///

///

**Fraud and Misrepresentation**

Fraud and misrepresentation cause of action are alleged that various paragraphs of the Complaint (i.e. Complaint paragraphs 47, 80 through 85. The Complaint alleges false statements of material fact which Williamson relied upon to his detriment (paragraph 47 and its subparts). Furthermore, the Complaint alleges at "COUNT III (Misrepresentations, Fraud and Omissions against All Defendants)" that "all of the misrepresentations and omissions set forth above were made to Plaintiffs and relied upon by Plaintiffs in making the purchase and investment described herein by [Williamson]" (Complaint, para. 81).  Furthermore, the Complaint alleges that such misrepresentations and omissions were material and caused Plaintiffs to be misled about the true nature of the investment. "Plaintiffs relied in good faith on the misrepresentations and omissions to his detriment." (Complaint, paragraph 82).  It was alleged against all Defendants, that "the Defendants knew or should [have known] that such representations were false. (sic)" (Complaint, para. 83).  It is further alleged that such inducement caused plaintiff to expend funds in excess of $300,000. (Complaint para. 85).  Furthermore, the Complaint specifically seeks all compensatory, incidental damages and punitive damages recoverable by law as may be shown through the evidence.

**Plaintiffs' Damages.**

Plaintiff will offer proof that but for neglects, defaults, and breaches, there would have more likely than not been a viable company of Vicki's Vodka LLC and its

intellectual property products. The product was developed, marketed, and promoted up to the point where Defendants are alleged to have committed breaches and tortious acts causing failure and cessation of Vicki's Vodka as a viable company. The evidence supports the finding that, but for Defendants' neglects and defaults, Vicki's Vodka spirits would have been marketed, distributed, and sold through viable business of Vicki's Vodka.  The evidence supports the claim that Plaintiff, who performed his obligations and commitments as part of the agreement, was deprived of his investment because of refusal on the part of Gunvalson to perform her agreed obligations, that were exclusively within her control.  Given the unique identity of the products in the Vicki line, there was no viable replacement option for Williamson and Vicki's Vodka to replace or cover damages through other means.  The evidence supports that Gunvalson and her then boyfriend, Brooks Ayers, induced Williamson to invest through providing Nicholson and Sweetwater's projected Sales Projections, projecting to Williamson that the Vicki's Vodka project would net over $2.4 million per year by the third year of production and distribution of vodka products (2015), with rising net profits thereafter, given Gunvalson's celebrity and Nicholson/Sweetwater's established distribution channels utilized with other liquor spirits in its distribution chain.

     Expert analysis and data received in evidence, using a model industry analysis of an almost identical spirit product launched through the same channels, with marketing and promotion on the Bravo Network's New Jersey Housewives series, was compelling in understanding the value of the investment.

Plaintiff lost the value of his investment. The evidence supports the finding that Gunvalson's actions and refusal to allow her involvement was the cause of derailment and destruction of the Vicki's Vodka project. Such unwarranted repudiation occurred after thousands of Vicki's Vodka products had been blended, bottled, and were ready for distribution.

Vicki's Vodka's product was brought to a full culmination of a marketable and distributable product. It is reasonable to assume based upon the credible evidence received that, but for the defaults, breaches, and tortious conduct on part of Gunvalson. Vicki's Vodka would have launched and been in full distribution providing the parties a full expectation of monetary benefits.

The evidence supports the finding that Williamson paid for design, logos, trademarking, attorney fees for licensing and distribution, transportation, storage of product, batches of vodka bottled for distribution prior to breaches, in addition to his time labor and efforts in fulfilling his role on behalf of Vicki's Vodka. The evidence supports the finding that Vicki's Vodka would have been a viable product and valuable intellectual property, which the evidence supports would in reasonable probability have had a present value of $61,000,000.00, and that Williamson's two-third ownership would have caused the value of his investment to be in the sum of $42,666,666,66. This conclusion is supported by comparison analysis of New Jersey Housewives castmember, Bethany Frankl, in her marketing and sale of her brand of tequila known as "Skinny Girl" through the same Bravo Network channels as utilized for Vicki's Vodka.

Plaintiff expert forensic accountants have opined, using a model industry analysis of an almost identical spirit product launched through the same channels, with marketing and promotion on the Bravo Network's New Jersey Housewives series, and that such investment has a value within a reasonable degree of accounting probability of $64,000,000.00.

DATED this 10th day of June 2021,

**THE WESBROOKS LAW FIRM, P.L.L.C.**

By: /s/*Mark D. Wesbrooks*
Mark D. Wesbrooks, Esq.
*Attorneys for Robert Williamson,*
*Catherine Williamson, & Vicki's Vodka, LLC*

## CERTIFICATE OF SERVICE

I, Mark D. Wesbrooks, hereby certify that on October 1, 2020, I filed through the Court's ECF system and served either through the ECF system or by electronic mail the foregoing document described as: **PLAINTIFFS PREHEARING BRIEF REGARDING DEFAULT PROCEEDINGS and PROPOSED FORM OF JUDGMENTS** using the Court's electronic filing system. A copy of the foregoing document(s) will be served via the Court's electronic filing system on interested parties in this action, or by email/regular mail as follows:

**2:13-cv-01019-JAD-EJY Notice has been electronically mailed to:**

Tony L Abbatangelo (Terminated)   Tony@paulpaddalaw.com, arelicep@paulpaddalaw.com

Edward Randall Miley   emiley@mileylaw.com

Michael D. Mazur   mdmazur@gmail.com, Mitchell.Billings@roselbrand.com

*/s/Mark Wesbrooks*