UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Robert Williamson, III and Vicki's Vodka, LLC, <br><br>　　　Plaintiffs<br><br>v.<br><br>Victoria L. Gunvalson, et al.,<br><br>　　　Defendants | Case No.: 2:13-cv-01019-JAD-EJY <br><br>**Order Denying Post-trial Motions**<br><br>[ECF Nos. 226, 227, 228, 229, 231] |

　　　For eight years, Robert Williamson, Victoria "Vicki" Gunvalson, Michael Nicholson, and their respective romantic partners and companies battled over the fallout of failed spirits company Vicki's Vodka, LLC.  When the bench trial began last summer, the case had been narrowed to Williamson's and Vicki's Vodka's claims against Gunvalson and Nicholson, as defaults had been entered against Gunvalson's Woo Hoo Productions, LLC entity; Nicholson's company Cougar Juice Vodka, LLC; and Sweetwaters Distillers, Inc., which was the vodka distillery that Nicholson used to manufacture his vodka recipe.[1]  After five days of testimony and reviewing the parties' exhibits and briefing, I found that Williamson and Vicki's Vodka had failed to prove any of their claims or damages, so I entered judgment in favor of Gunvalson and Nicholson and against the plaintiffs.[2]

　　　Gunvalson and Nicholson move for an award of attorney's fees under the Nevada statute that permits such awards for prevailing parties who recover less than $20,000.  But because that

---

[1] ECF No. 161 (Cougar Juice default); ECF No. 213 (Woo Hoo default); ECF No. 10 in consolidated case 2:13-cv-2022-JAD-EJY (Sweetwaters default).

[2] ECF No. 224 (findings of fact, conclusions of law, and judgment).

statute only applies to litigants who recovered some monetary award, and Gunvalson and Nicholson did not, their request fails. In an effort to distill some monetary benefit from this lengthy litigation, Williamson and Vicki's Vodka move for default judgments against Woo Hoo, Cougar Juice, and Sweetwaters, and they ask me to reconsider the trial evidence of Williamson's damages, which they contend support default judgments of hundreds of thousands of dollars. Because I find that the well-pled allegations against the defaulting defendants fall far short of stating any viable claim against them, and because the damages evidence is no more persuasive today than it was when I rejected it at trial, I deny the motions.

## I.   Defendants' Motion for Attorney's Fees [ECF No. 226]

Gunvalson, Nicholson, Woo Hoo, and Cougar Juice move for an award of attorney's fees and costs exclusively under Nevada Revised Statute (NRS) 18.010(2) "since they were the prevailing parties in the litigation and did not recover more than $20,000."[3] But Woo Hoo and Cougar Juice were not prevailing parties in the litigation—they did not participate in the trial because default was entered against them before it began.[4] And although Gunvalson and Nicholson did prevail at trial, they didn't do so in a way that triggers NRS 18.010(2). That statute allows the court to award fees when the claimant recovers a money judgment of less than $20,000, and "the recovery of a money judgment is a prerequisite to an award of attorney fees" under this statute.[5] As the Nevada Supreme Court explained in *Smith v. Crown Financial Services of America*, being a defendant who defeats the plaintiff's affirmative claims, resulting in

---

[3] ECF No. 226 at 2. Williamson opposed the motion, ECF No. 223, but no reply was filed.

[4] *See supra* note 1.

[5] *Smith v. Crown Financial Services of America*, 890 P.2d 769, 774 (Nev. 1995).

a zero-dollar defense judgment, doesn't trigger it.[6]  Because Gunvalson and Nicholson did not recover a money judgment, they cannot be awarded fees or costs under NRS 18.010(2).

## II.  Requests for default judgments against Sweetwaters, Cougar Juice, and Woo Hoo [ECF Nos. 227, 228, 229, 231]

Having failed to succeed on any claim at trial, Williamson and Vicki's Vodka ask this court to reopen the judgment against them and award them default judgments against Sweetwaters, Cougar Juice, and Woo Hoo.[7]  Without even mentioning the nature of the claims against these defaulting defendants, they argue that the allegations in the complaint establish the liability of each of them, and they assert that the evidence that this court found insufficient to justify any award of damages at trial should earn them $465,796.59 on default.[8]  The plaintiffs fatally overstate the effect of the entry of these defaults, and the varnish they now put on their damages evidence makes it no more persuasive today than it was at trial.

### A.  Standards for evaluating requests for default judgments

An entry of default results in all well-pled factual allegations being deemed true—except as to damages.[9]  And "necessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[10]  So when deciding whether to grant default judgment, the court still has an obligation to examine whether the claims are legally sufficient,

---

[6] *Id.* at 775.

[7] ECF No. 227 (motion to alter or amend judgment); ECF Nos. 228, 229, and 231 (motions for default judgments against Sweetwaters, Cougar Juice, and Woo Hoo, respectively).

[8] *See* ECF Nos. 228 at ¶ 7, 229 at ¶ 7, and 231 at ¶ 4.

[9] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987).

[10] *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

and the plaintiff must prove up the requested damages.[11]  In *Eitel v. McCool*, the Ninth Circuit identified seven factors for courts to evaluate when deciding whether to enter a default judgment. Based on the posture of this case, the most relevant of those factors are the merits of the plaintiffs' substantive claims and the sufficiency of the complaint against the defaulting defendants—two factors that Williamson and Vicki's Vodka gloss over completely.[12]

### B. The complaint fails to state a claim against any defaulting defendant.

The verified complaint purports to contain claims against "all defendants," which include Sweetwaters, Cougar Juice, and Woo Hoo, for misrepresentation, fraud, and omissions; unjust enrichment; promissory estoppel; civil conspiracy; and intentional infliction of emotional distress.[13]  But the factual allegations against these defendants are few.  This is unsurprising because the main target of this litigation was Gunvalson, with Nicholson and Gunvalson's then-boyfriend David Brooks Ayers as the secondary targets.[14]  As Gunvalson and Nicholson's entities or affiliates, the defaulted defendants were tertiary targets at best, and the scarce references to them fall far short of stating any cause of action.

There are just five substantive factual allegations that even mention the defaulting defendants:

- Nicholson falsely represented that he "and/or" Cougar Juice "were licensed distillers that could produce, manufacture and distribute" the vodka product (¶47(A));

---

[11] *Id.*; *see also Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (listing "the merits of plaintiff's substantive claim" among the seven factors for a court to weigh in deciding whether to grant default judgment).

[12] *Eitel*, 782 F.2d at 1471–72.

[13] ECF No. 1-1 in consolidated case 2:13-cv-2022-JAD-EJY.

[14] *See generally id.*

- Nicholson falsely represented that he "and/or" Cougar Juice "had extensive experience in the production of [v]odka and that [he and/or [Cougar Juice] owned all the necessary equipment and expertise to produce the substantial amount of [v]odka that would be necessary to support the sales of" Vicki's Vodka (¶ 47(G));
- Nicholson falsely represented that he was the owner of Sweetwaters, "which would produce the vodka" (¶ 47(H));
- In an August 20, 2013, Gunvalson's counsel sent Williamson a letter that "took the position that the three equal owners of" the Vicki's Vodka company "were now[] Cougar Juice Vodka, LLC; Woo Hoo Productions, Inc. and Robert Williamson," which was false (¶¶ 58–60); and
- "The tru[th] is that Nicholson and [Cougar Juice] relinquished any ownership" in the company in August 2012 (¶ 61).

Although the complaint is rife with further factual allegations against Gunvalson, Ayers, and Nicholson, it lacks any allegation that these individuals were acting on behalf of the defaulting defendants such that the individuals' conduct can be attributed to the defaulting defendants. Even if the actions of Gunvalson and Nicholson would bind these entities, I determined through the bench trial that the acts of those individuals did not subject them to liability under any theory that the plaintiffs pursued.[15]  I summarized that "the evidence at trial merely indicate[d] that a group of people thought a business would succeed, worked hard to make that business happen, but failed."[16]

---

[15] *See generally* ECF No. 224.

[16] *Id*. at 17.

And while there are numerous generalized statements in the complaint that "the Defendants, and each of them" did various things like "conspire[] to work in concert to obtain money from" Williamson and cause him "to suffer severe emotional distress" and other damage,[17] these are conclusory allegations that lack any factual support. Conclusory statements like these are not well-pled, and they are not taken as true as a result of the default.[18] So the allegations in the complaint are insufficient to state any claim against the defaulting defendants.

Although the court may consider supplemental evidence in a default-judgment proceeding, the plaintiffs offer none. They explain, "[g]iven the entry of defaults against Woo Hoo, Sweetwater[,] and Cougar, it was not necessary to bring in liability witnesses to establish claims that were already determined by the Court."[19] The net result is that the plaintiffs have not shown that any claim against Sweetwaters, Woo Hoo, or Cougar Juice was meritorious. So these *Eitel* factors weigh against the entry of default judgment.[20]

### C. The evidence does not support an award of damages against the defaulting defendants.

A less weighty but still relevant *Eitel* factor here[21] is "the sum of money at stake in the action."[22] Although the plaintiffs don't mention the *Eitel* factors, let alone discuss how they apply here, it is the damages analysis on which their briefing is focused. They argue that "the

---

[17] *See, e.g., id.* at ¶¶ 64–65, 89, 93, 98, 112.

[18] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that labels, conclusions, and "formulaic recitation[s] of the elements of a cause of action" are not well-pled facts).

[19] ECF No. 227 at 13.

[20] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092–93 (9th Cir. 1980) ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant.").

[21] The remaining *Eitel* factors are not useful because of the post-trial posture of this case.

[22] *Eitel*, 782 F.2d at 1472.

evidence presented at trial establish[ed] out-of-pocket expenses in the sum of $465,796.59."[23] They add that they "submitted evidence of compensatory damages, as well as future expectation damages under more than one scenario," highlighting the testimony of their "[f]orensic expert, Joe Lewin" [sic].[24]

Indeed, Joe *Leauanae* offered three damages models, and the plaintiffs claimed that the amount they are owed lies "somewhere between" $9,260,150.74, $15,433,598.50, and upwards of $43,000,000.[25] For the reasons I detailed in my findings and conclusions, I found that "[t]hese models are far too speculative and unsubstantiated to warrant an award of expectation damages" and that they suffered from a "lack of credibility or evidentiary support."[26] The same was true of Williamson's evidence of out-of-pocket loss. I "did not find that Williamson credibly testified about the payments that he provided to fund the company. . . ."[27] "Throughout trial, he provided off-the-cuff numbers about his expenses and, when shown evidence that contradicted those claims, [he] either testified that he must have been mistaken or that those records were inaccurate. He also frequently testified to improbably high expenses lacking any documentary support, like spending upwards of $115,000 on travel for the company to Reno, Las Vegas, the 'East Coast,' and parts of California. These," I found, "are hardly the type of non-speculative damages I am permitted to award."[28] Nothing that Williamson and Vicki's Vodka offer in these pending motions persuades me that these findings were wrong or should be reversed. So even if

---

[23] ECF Nos. 228 at ¶ 7, 229 at ¶ 7, and 231 at ¶ 4.
[24] ECF No. 227 at 12–13.
[25] *See* ECF No. 224 at 18–19.
[26] *Id*. at 19, incorporated herein by reference.
[27] *Id*.
[28] *Id*.

I had found that the entry of defaults established the defaulting defendants' liability on any theory, I would still deny the motions for default judgments because the damages evidence remains too speculative and incredible to support an award.[29]

## Conclusion

IT IS THEREFORE ORDERED that:

- Defendants' Motion for Attorneys' Fees and Costs **[ECF No. 226] is DENIED**;

- Plaintiffs' Motion to Alter or Amend Judgment and Motions for Default Judgment against Sweetwaters Distillers, Inc., Cougar Juice Vodka, and Woo Hoo Productions, LLC **[ECF Nos. 227, 228, 229, 231] are DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
January 6, 2022

---

[29] Nevada courts and the Ninth Circuit have long held that while "the amount of damages need not be proven with mathematical certainty, testimony on the amount may not be speculative." *Clark Cnty Sch. Dist. v. Richardson Constr., Inc.*, 168 P.3d 87, 97 (Nev. 2007); *Hathaway Dinwiddie Constr. Co. v. United Air Lines, Inc.*, 50 F. App'x 817, 822 (9th Cir. 2002) (unpublished).

8